## FORT WORTH CITY COMPANY *v.* SMITH BRIDGE COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 565.  Submitted January 3, 1894. — Decided January 15, 1894.

This court cannot take notice of a stipulation of counsel as to evidence bearing on a finding of the court below in an action brought here by writ of error.

Time was not of the essence of the contract upon which this action is founded.

A corporation created for the purpose of dealing in lands, and to which the powers to purchase, to subdivide, to sell, and to make any contract essential to the transaction of its business are expressly granted, possesses, as fairly incidental, the power to incur liability in respect of securing better facilities for transit to and from the lots or lands which it is its business to acquire and dispose of.

It being within the power of such a corporation to enter into such a contract, the provisions of the constitution of Texas, touching the issue of bonds by corporations formed under its laws, will not prevent its becoming liable to perform its agreements therein, after receiving benefits under it at the expense of the other contracting party.

THE Smith Bridge Company, a private corporation, incorporated under the laws of Ohio, and having its domicil in the city of Toledo in that State, brought this action against the Fort Worth City Company, incorporated under the laws of, and having its domicil in, the city of Fort Worth in the State of Texas, in the Circuit Court of the United States for the Northern District of Texas, and alleged that on May 19, 1888, the parties entered into a certain contract whereby the bridge company, for the consideration of $8166.66 to be paid to it by the defendant company, agreed to build for the latter a bridge across the Trinity River near Fort Worth, at a point just north of the public square in that city to be designated by the city engineer, and in accordance with specifications furnished by him. It was further averred that the contract price of the bridge was $24,500, and that the city of Fort Worth and the county of Tarrant had agreed with the bridge company, each to pay one-third of the cost, and had done so; that the bridge company constructed the bridge according to the contract; that the consideration to be paid by the Fort Worth City Company was contracted to be paid in the first mortgage bonds of that company and the North Side Street Railway Company, and that the defendant had failed and refused to deliver the bonds, which were of the face value of $8166.66.

The defendant company answered by way of demurrer and special exception that the petition did not disclose the purposes for which the two corporations were incorporated; nor any power or authority in the defendant to use its funds and property for the purpose of constructing the bridge; general denial; and also that the contract sued on was without authority on the part of the board of directors and officers of the Fort Worth City Company, which was organized "for the purchase, subdivision, and sale of land in cities, towns, and villages," under the provisions of title twenty of the Revised

Statutes of Texas; that the bridge was to be and was built for the use and benefit of the general public on one of the public streets of the city; and was not under defendant's control or owned by it; that defendant company was not to have and did not have any property in the same or other right to use the same than such as the public in general had; that, therefore, the contract was illegal and unauthorized; and that the contract was also void in providing that the defendant should deliver to the plaintiff bonds executed by itself and by the North Side Street Railway Company, the latter being a separate and independent corporation; and that it could not and did not obligate itself to deliver any bonds executed by any other corporation, and was not authorized to legally acquire the bonds of any other corporation. Defendant further stated "that the sole and only benefit it ever expected to derive from the construction of said bridge was the enhancement of its property by making it more convenient of access and so more readily salable; that the contract made by the plaintiff with the city of Fort Worth required the completion of the bridge by the first day of November, 1888, and with reference to this stipulation, the contract here sued on was entered into; that the value of the bridge to the defendant depended on its early completion;" that the bridge was not completed until at least six months after the time stated in the contract with the city, and defendant had been greatly damaged by the failure to complete it, "for that at the time the said contract was made there was an active demand for real estate in Fort Worth and its suburbs, which defendant expected would continue to the time, and for a long time after the date when the bridge was to be completed;" and that had the bridge been completed, a considerable amount of its property could have been sold at a profit.

Plaintiff thereupon filed its supplemental petition in reply, excepting to the special answers of the defendant, and alleging that, at the time of making the contract with the defendant, the latter owned a large tract of land lying on the north side of the Trinity River, over which river the bridge was built, which land it had subdivided into lots, and was offering them

for sale; that the river separated the land from the city of Fort Worth; that it was necessary, in order to accomplish a ready sale of the lands, that the company have a ready means of access from the city thereto, and that the company had this object in view when it made the contract sued on with the plaintiff; that the erection of the bridge afforded such means of access from the city to the lands, and immediately upon the completion of the bridge the North Side Street Railway Company constructed across the bridge a railway connecting the city of Fort Worth with the lands. It was further alleged that the latter company was organized in the interest of the defendant for the purpose of bringing its lots into the market; that the stockholders of both companies were for the most part the same; that by reason of the erection of the bridge and the operation of the street railway the value of the lots was greatly enhanced and the sale thereof was promoted; and that the defendant made this contract for the purpose of promoting its business, and expected to use the same in the transaction thereof after its construction by the plaintiff under the contract; and that the defendant, having contracted with plaintiff to construct the bridge, and having accepted and used it, was estopped from denying the validity of the contract on the ground of want of power in the defendant to make the same.

The case coming on to be tried, the exceptions to plaintiff's petition and to defendant's answer were overruled, and a jury having been waived by written stipulation, the cause was submitted to the court for trial, whereupon it found the law and facts for the plaintiff and entered judgment in its favor for the sum of $9633.02, with interest and costs; and findings of fact and conclusions of law were made and filed as follows:

" The court makes the following special findings of fact on the issues made in the case:

" 1. The defendant, the Fort Worth City Company, was at the time of making the contract with the plaintiff here sued on and is now a private corporation created and organized for the purchase, subdivision, and sale of land in cities, towns, and villages under the general laws of the State of Texas relating to private corporations.

" 2. That on the 16th day of May, 1888, the City of ·Fort Worth, a municipal corporation of the State of Texas, entered into a contract with the plaintiff herein, for the construction of a certain bridge on one of the streets of said city where it crosses the Trinity River in said city, it being provided in the said contract that one-third of the contract price of said bridge :— that is, eight thousand one hundred and sixty-six dollars and sixty-six and two-thirds cents — should be paid by the defendant herein, and a like amount by Tarrant County, which is also a municipal corporation of said State, the bridge to be completed on or before the first day of November, 1888, the plaintiff being required to give a bond within twenty days from the 16th day of May, 1888, payable to said city, in the sum of ten thousand dollars, for the completion of said bridge on or before November 1, 1888, in accordance with certain specifications, said bond to be made part of the contract with the said city.

" 3. That on the 19th day of May, 1888, the president and secretary of the defendant corporation, owning together eighty-eight per cent of its stock, executed a contract in its name, obligating it to pay said sum of $8166.66⅔ cents in the joint first mortgage bonds of the defendant and the North Side Railway Company, another separate and distinct corporation, in which said president and secretary owned likewise said per cent of stock, said bonds secured on the lands, franchises, and possessions of both corporations, the said bonds to be delivered on the building of said bridge according to the terms of said contract between plaintiff and defendant and the said contract between plaintiff and the city of Fort Worth to the acceptance of the street and alley committee and the city engineer of said city, and the turning of the same over to said city completed in accordance with the above-mentioned contracts and the contract between plaintiff and Tarrant County.

" 4. That the bridge was not completed and turned over to the city of Fort Worth until the 19th day of March, 1889, but the delay was caused neither by the plaintiff nor the defendant herein, but altogether by the city of Fort Worth, and time was not of the essence of the contract.

" 5. That the said bridge was to be and is a part of a public street of the incorporated city of Fort. Worth, and the defendant was not to have nor has it ever had any property interest in or control over the same or use of it, except as a part of the general public. .

" 6. The defendant was not damaged by the delay in the completion of the bridge.

" 7. That the bridge when completed and turned over to the said city was in substantial compliance with the contracts mentioned herein.

" 8. That a proper demand was made by the plaintiff on the defendant for the delivery of the said bonds, and the defendant refused to deliver the same on said demand.

" 9. That Tarrant County and Fort Worth paid their proportional part of the sum of ——.

" 10. That the bridge was expected to enhance the value of the property owned by the defendant by furnishing another mode of access thereto from the city of Fort Worth.

" And on the findings of fact the conclusions of law are as follows :

" 1. That the defendant had the power to make the contract here sued on, and that the same is therefore legal, valid, and binding upon it.

" 2. That the plaintiff is entitled to judgment in this court for the sum of eight thousand one hundred and sixty-six dollars and sixty-six and two-thirds cents, with eight per cent interest from the 19th day of March, 1889."

Thereupon this writ of error was brought.

*Mr. Thomas P. Martin* for plaintiff in error.

*Mr. M. L. Crawford* for defendant in error.

Mr. Chief Justice Fuller delivered the opinion of the court.

This case having been tried by the court under the statute, we can only inquire whether the facts found in the special

findings, considered in connection with the pleadings, are sufficient to sustain the judgment, and whether any error was committed upon rulings on matters of law properly preserved by bill of exceptions. Two bills of exception were taken, but they simply present the same questions as the special findings of fact and the conclusions of law deduced therefrom. A stipulation of counsel as to the evidence bearing on the tenth finding appears in the record; but of that we cannot take notice. *Tyre & Spring Works Co.* v. *Spalding*, 116 U. S. 541.

Of the five errors assigned in the brief of the counsel, the first, second, fourth, and fifth present the question in various aspects of the power of the Fort Worth City Company to make the contract sued on, or incur the liability, for which recovery was had, and the third relates to the failure of the bridge company to complete the bridge within the time stipulated in its contract with the city of Fort Worth.

The court found that the bridge was to be completed on or before November 1, 1888, and that bond was required to be given to the city to secure that result; that it was not completed and turned over until March 19, 1889, but that the delay was caused not by the plaintiff or defendant, but altogether by the city; that time was not of the essence of the contract, and that the defendant was not damaged by the delay. The contract between these parties is attached to the petition, and refers to the contracts by the bridge company with the city and the county, the defendant agreeing to pay the stipulated sum in consideration of the building and construction of the bridge in accordance with the specifications and to the acceptance of the city engineer and the city, and the turning of the bridge over to the city, completed in accordance with this and the other contracts; but as we agree with the court that time was not of the essence, and as the court has found as matter of fact that plaintiff was not in default, and that the defendant was not injured by the delay, the result necessarily follows that the third error assigned is not well taken.

The Fort Worth City Company was organized under the provisions of title twenty of the Revised Statutes of the State of Texas relating to private corporations and the amendments

thereto, "for the purchase, subdivision and sale of land in cities, towns, and villages," as authorized by article 566 of those statutes, (one of the articles under title twenty,) as amended by chapter 61 of the Laws of 1885. Sayle's Tex. Civ. Stat. 212; Laws Tex. 1885, 59, c. 61.

The general rule is that corporations have only such powers as are granted and the powers incidental thereto, and in arriving at a conclusion as to the powers of this corporation the applicable provisions of the title under which it was organized must be considered; legislation which will be found to be in harmony with the common law.

Article 575 provided that every private corporation as such has power "to enter into any obligation or contract essential to the transaction of its authorized business;" and article 589, that "no corporation created under the provisions of this title shall employ its stock, means, assets, or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate objects of its creation." Sayle's Tex. Stat. 217, 219.

In *Green Bay & Minnesota Railroad* v. *Union Steamboat Co.*, 107 U. S. 98, 100, it was said: "The charter of a corporation, read in connection with the general laws applicable to it, is the measure of its powers, and a contract manifestly beyond those powers will not sustain an action against the corporation. But whatever, under the charter and other general laws, reasonably construed, may fairly be regarded as incidental to the objects for which the corporation is created, is not to be taken as prohibited."

This corporation was formed under a general law containing, in addition to the provision for the creation of such a corporation, the other provisions we have quoted.

The question of power is reduced, therefore, to this: Whether a corporation created for the purpose of dealing in lands, and to which the powers to purchase, to subdivide, and to sell, and to make any contract essential to the transaction of its business, are expressly granted, possesses as fairly incidental, the power to incur liability in respect of securing better facilities for transit to and from the lots or lands, which it is its busi-

ness to acquire and dispose of? We entertain no doubt that under these findings the defendant company possessed the power to enter into the contract in question, and that the contract having been fully performed by the bridge company, and the defendant company having the full benefit thereof, the latter cannot now be allowed to. say that the power was not properly exercised.

The object of the creation of the corporation was the acquisition and sale of lands on subdivision, and it cannot successfully be denied that that object would be directly promoted by the use of legitimate business methods to render the lands accessible. This involved the expenditure of money or the assumption of liability, but there is no element in this case of any unreasonable excess in that regard, or of the pursuit of any abnormal and extraordinary method. The result sought was in accomplishment of the legitimate objects of the corporation and essential to the transaction of its authorized business, and the power to make the contract was fairly incidental if not expressly granted.

Reference is made to section 6 of article 12 of the Constitution of Texas, which provides: "No corporation shall issue stock or bonds except for money paid, labor done, or property actually received, and all fictitious increase of stock or indebtedness shall be void." But if this section be in any way applicable and could be regarded as invalidating so much of the contract as provided that the consideration should be paid in bonds, which is not to be conceded, the company "having received benefits at the expense of the other contracting party, cannot object that it was not empowered to perform what it promised in return, in the mode in which it promised to perform," and would still remain liable on its contract, otherwise within its lawful powers. *Hitchcock* v. *Galveston*, 96 U. S. 341, 351; *Central Transportation Co.* v. *Pullman Co.*, 139 U. S. 24, 58.

*Judgment affirmed.*