[Cunningham Hardware Co. v. Gama Transportation Co. et al.]

the old stock, then the action cannot be maintained, because the parties failed to make any contract at all. "Parties, in attempting to make a contract, sometimes appear to have agreed, when on closer inquiry they discover they have not. They misunderstood each other, either as to the subject-matter, or as to some term of the agreement. There is, in such case, an absence of that indispensable element of all contracts, the concurring assent of two minds. When this is the case, and it is sufficiently shown any court having jurisdiction will declare there is no contract."—*Houston v. Faul*, 86 Ala. 232, 5 South. 433. The existence of such a misunderstanding as is mentioned in this quotation was alleged in the special plea last above described.

What has been said sufficiently indicates the ground of the conclusion reached that the court was in error in sustaining the demurrers to the special pleas which have been the subjects of consideration.

Reversed and remanded.

# Cunningham Hardware Co. *v.* Gama Transportation Co. *et al.*

*Assumpsit.*

(Decided April 4, 1912.   58 South. 740.)

1. *Corporations; Powers; Accommodation Endorsers.*—Unless such powers are expressly conferred or are incidental to some other power expressly given, a corporation has no power to make, endorse or accept accommodation papers in which it has no interest.

2. *Same; Incidental Power.*—The charter of a corporation read in connection with the general law is the measure of its corporate power, but the corporation may exercise such incidental powers as under a reasonable construction of the charter and general laws may be fairly regarded as incidental to the purpose of its creation.

36 CA

3. *Same; Accommodation Paper; Interest in Person Accommo-dated.*—A corporation generally has the implied power to make arrangements for the carriage of its product to the market, and under section 3496, Code 1907, the right is expressly given a manufacturing corporation to embark its capital in a railroad enterprise, hence, a company organized to manufacture and sell lumber, when interested in a transportation company, practically the entire plant of which was owned by the lumber company, and which was used for the transportation of its lumber almost exclusively, could sign as accommodation endorser, notes by the lumber company to pay for supplies necessary to management of the railroad.

4. *Appeal and Error; Review; Questions Raised.*—A defect in a complaint cannot be raised for the first time on appeal when such defects were not pointed out by demurrer.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Action by Cunningham Hardware Company against the Gama Transportation Company and another. From a judgment upon a nonsuit after the sustaining of demurrers to the complaint, plaintiff appeals. Reversed and remanded.

Count 1 is as follows:

"The plaintiff claims of the defendants two hundred and five dollars and forty-seven cents ($205.47), due by promissory note made by the Gama Transportation Company, a corporation, on, to wit, the 12th day of September, 1910, and payable 90 days after date, with interest thereon from said 12th day of September, 1910, which said promissory note was indorsed by the Bay City Lumber Company, a corporation, and, not being paid at maturity, was duly protested, of which both of the defendants had due notice. The said note, with the damages and interest thereon, is still unpaid. Plaintiff avers that the Gama Transportation Company was organized as a transportation corporation by practically the same persons as the stockholders of the Bay City Lumber Company, a corporation, and that said Gama Transportation Company was organized for the purpose of logging the timber lands owned by the Bay City Lumber Company

and the Sullivan Timber Company, which said lands were situated in Monroe county, Alabama; that the said Gama Transportation Company was operated and absolutely controlled by stockholders of the Bay City Lumber Company, a corporation, and was in effect merely a subsidiary corporation; that the incorporators and only stockholders of the said Bay City Lumber Company were J. T. McKeon, Helen McKeon, and Henry L. Glover, while the incorporators and only stockholders of the said Gama Transportation Company were J. T. McKeon, Helen McKeon, and George E. Glover, the said George E. Glover being a son of the said Henry L. Glover; that practically the whole of the right of way over which the Gama Transportation Company operated was owned by the said Bay City Lumber Company, and that the steel rails on the said right of way, and the logging cars, locomotives, and other rolling stock used in its business by the Gama Transportation Company, were owned by the said Bay City Lumber Company, or were leased or otherwise obtained by the said Bay City Lumber Company, and furnished by the said Bay City Lumber Company for the use of the said Gama Transportation Company; that the note above described was given by the Gama Transportation Company to the plaintiff, Cunningham Hardware Company, for the purchase price of materials and supplies furnished by plaintiff to the Gama Transportation Company, for use on the logging railroad equipment and logging railroad of the said Bay City Lumber Company, which was being used by the said Gama Transportation Company, which said equipment was used almost exclusively in hauling logs belonging to the Bay City Lumber Company, or logs in which the Bay City Lumber Company had an interest, as above set out; that it was necessary for the said Gama Transportation Company to obtain the said supplies and materi-

als so furnished by the plaintiff in order to be enabled
to haul the logs belonging to the Bay City Lumber Com-
pany, and that it was this relation between the two cor-
porations which caused the Bay City Lumber Company
to indorse the said note; that the said Gama Transporta-
tion Company did practically no other business than to
haul logs belonging to the Bay City Lumber Company,
and logs in which the said Bay City Lumber Company
owned a half interest; that, as stated above, the said
Gama Transportation Company was in effect a subsidi-
ary corporation to the Bay City Lumber Company, and
practically its entire business consisted  in conducting
the logging department of the Bay City Lumber Com-
pany, and that the said Gama Transportation Company
was organized in part by stockholders of the Bay City
Lumber Company, and operated in furtherance of the
business of the said Bay City Lumber Company, and
for the purpose of conducting the logging business of
the said Bay City Lumber Company, and that the in-
dorsement of said note was made by the said Bay City
Lumber Company in furtherance of their own business;
that by the terms of the certificate of incorporation
filed by the Bay City Lumber Company the general
purposes of the corporation were:  'The manufactur-
ing, purchasing, selling, exporting, handling, and deal-
ing in lumber, timber, and all other wood goods and
products, *  *  * and the purchasing of lands for the
purpose of cutting timber thereof, and the purchasing
and acquiring of timber rights, *  *  * and the build-
ing, constructing,  and operating of wharfs, booms,
tramways, ditches, and canals, as well as the erection
of all necessary buildings, the owning, hiring, or leas-
ing of vessels and water craft required in the operation
of the proposed business, the buying, leasing, or other-
wise acquiring, holding, and owning of all necessary

real estate, mills, factories, and other personal property to effectuate the purposes of the said company, and appropriate to its business or any part trereof.' That by the terms of the certificate of incorporation filed by the Gama Transportation Company among its general purposes were: The building and operating of trams, tramways, and railways connected with the waters flowing into Mobile Bay and making all necessary contracts in and about the same,' etc.   That although said Bay City Lumber Company was authorized to operate railroads for the purpose of hauling its logs, the said company did not operate a logging railroad, but had this part of their business transacted by the said Gama Transportation Company, which, as above alleged, was in effect merely a subsidiary corporation to the said Bay City Lumber Company."

The second count is the same as the first, except as to the amount due, which is claimed to be $285.18, due the 30th day of September, 1910.

The demurrers are that "the complaint is a mere conclusion; (2) the law recognizes no such situation or entity as an auxiliary corporation, each corporaciou in law being a separate entity; (3) the alleged connection, one with the other, of the two defendants corporations, fails to reveal anything which would make binding an indorsement by the Bay City Lumber Company on the Gama Transportation Company's obligation, upon the sole consideration that some of the stockholders of the lumber company are stockholders of the transportation company."

INGE & McCORVEY, for appellant.   The court erred in sustaining demurrers to the complaint because filed jointly against two defendants, as the count was good as to one of the defendants.—6 Enc. P. & P. 321; 31 Cyc.

332. Under the facts shown by the complaint and insisted on by the plaintiff, such an interest is shown in the transportation company by the lumber company as to render it within the power of the lumber company to become an endorser for the transportation company.—*Mercantile T. Co. v. Keyser*, 18 S. E. 358; N. W. 460; 49 N. Y. Sup. 755; 56 Id. 387; 25 N. E. 1083; *Steiner & Lobman v. Steiner Land & L. Co.*, 120 Ala. 128; 10 Cyc. 1097; 183 Mass. 413. Special attention is directed to the provision of section 3496, Code. 1907.

STEVENS & LYONS, for appellee. The demurrers were rightly sustained though filed jointly, as the plaintiff must recover upon the contract alleged, and if it develops that all of the defendants are not liable, the plaintiff's remedy is by amendment striking the parties not liable.—*Lord v. Calhoun*, 162 Ala. 446; *Redmond v. L. & N.* 154 Ala. 314; *Garrison v. Hawkins L. Co.*, 111 Ala. 308. It appears on the face of each count of the complaint that all of the defendants are not liable on the contract alleged, and hence, demurrer was the proper way to raise it.—1 Chitty 703, note 1; *Goodlett v. Bretton*, 6 Black. 500. The endorsement was ultra vires and without consideration, and the allegation in regard to identity were not sufficient, and had no bearing on the question, nor was the allegation in regard to furtherance of business sufficient.—*Best Brewing Co. v. Klassen*, 57 N. E. 20. The supplies were not used on the railroad, and the lumber company was not benefitted, but even admitted that it was, still it was not liable.—*Gulf Y. P. L. Co. v. Chapman & Co.*, 159 Ala. 444. A corporation's powers are limited strictly by its charter.—*Central R. & B. Co. v. Smith*, 76 Ala. 572; *Chewacla L. Works v. Dismukes*, 87 Ala. 346; *Lanier L. Co. v. Reese*, 103 Ala. 622; *Steiner & Lobman v. Stei-*

*ner L. & L. Co.*, 120 Ala. 139.  Construing the pleadings most strongly against the pleader it must be assumed that the note was endorsed after delivery,  and was, therefore, without consideration.—*Savage v. 1st. Nat. Bank,* 112 Ala. 508; *Johnson v. Washburn,* 98 Ala. 258; *Richardson Bros. v. Fields.* 124 Ala. 535.

WALKER, P. J.—The effort in this case is to charge the Bay City Lumber Company, a corporation, with liability on its indorsement of two promissory notes made to the plaintiff (the appellant here) by the Gama Transportation Company, another corporation, the notes being for the purchase price of materials and supplies furnished by the plaintiff to the Gama Transportation Company.  The complaint avers at some length the relations existing between the maker and the indorser of the notes, and the circumstances under which the indorsements were made.  The contention of the appellant is that the indorsements, made under the circumstances stated in the complaint as amended, were so supported by a valuable consideration moving to the indorser as to impose upon it enforceable obligations, and that the complaint as amended was not subject to objection on either of the grounds assigned in the demurrers to it.  The main contention of the appellees, on the other hand, is that the averments of the amended complaint fail to show that the Bay City Lumber Company had any connection with the notes sued on other than that of a mere accommodation indorser, and that therefore it cannot be held liable on those indorsements.

If the complaint as amended is subject to this construction, it is plain that it discloses no right of recovery against the indorser, as "although a corporation has implied power to make and indorse negotiable notes and bills in carrying on its lawful business, yet it is

well established, as a general rule, by the great weight of authority, that it has no power to make, indorse, or accept, for the mere accommodation of others, notes and bills in which it has no interest, unless such power is expressly conferred, or is incidental to some other power expressly conferred."—*Steiner & Lobman v. Steiner Land & Lumber Co.,* 120 Ala. 128, 140, 26 South. 494, 497. The question then is whether the averments of the complaint as amended show that the indorsements were made under such circumstances as to impose liability on the corporation in the name of which they were made.

The complaint as amended discloses the following state of facts; the maker and indorser of the notes being hereinafter referred to, respectively, as the Transportation Company and the Lumber Company: The Lumber Company was engaged in the lumber business, cutting and shipping logs from timber lands in Monroe county, in this state, which it owned or was interested in. By the terms of its certificate of incorporation the general purposes of the corporation were: "The manufacturing, selling, exporting, handling and dealing in lumber, timber, and all other wood goods and products, * * * and the purchasing of lands for the purpose of cutting timber thereof, and the purchasing and acquiring of timber rights, * * * and the building, constructing and operation of wharfs, booms, tramways, ditches and canals, as well as the erection of all necessary buildings, the owning, hiring or leasing of vessels and watercraft required in the operation of the proposed business, the buying, leasing or otherwise acquiring, holding and owning of all necessary real estate, mills, factories and other personal property to effectuate the purposes of the said company, and apppropriate to its business or any part thereof." It did not do its own logging. This was

done by the Transportation Company; two of the three persons who were its incorporators and only stockholders being also, with one other person, the incorporators and only stockholders of the Lumber Company. The Transportation Company was engaged in the business of operating a railway, practically the whole of the right of way, of which, and also the steel rails on that right of way, and the logging cars, locomotives, and other rolling stock used in its business, were owned by the Lumber Company or were leased or otherwise obtained by it and furnished for the use of the Transportation Company. The materials and supplies for the purchase price of which the notes sued on were given were furnished by the plaintiff to the Transportation Company for use on the logging railroad equipment and logging railroad of the Lumber Company which the Transportation Company was using. That equipment was used almost exclusively in hauling logs belonging to the Lumber Company or in which it had an interest. The Transportation Company did practically no other business, and it was necessary for it to obtain the supplies and materials furnished on the notes sued on to enable it to do that business.

It is insisted by the counsel for the appellee that the ruling made in the case of *Gulf Yellow Pine Lumber Co. v. Chapman & Co.*, 159 Ala. 444, 48 South. 662, fully supports the action of the trial court in sustaining the demurrer to the amended complaint in this case. In that case it was held that a lumber company, which had power under its charter, "to operate and maintain a commissary or storehouse, to engage in the buying and sale of goods, and to purchase for either cash or credit, as it may deem proper," could not be held liable on a promise made in its name by its managing officer to pay for goods sold and delivered to one Lord to furnish

and maintain a boarding house conducted by him, in which the lumber company had no interest. The court held that the indirect benefit inuring to the corporation from the operation of the boarding house by Lord, in that it affords to the employes of the corporation a place to board, did not confer upon it such an interest in the boarding house as to entitle it to assume liability for expenses of conducting that business. The facts of that case clearly distinguish it from the one at bar. In that case the goods furnished were for use in the business of a third party in which the corporation sought to be charged had no interest. In the present case the materials and supplies were fuurnished for use on the property of the corporation sought to be held liable on the notes given for their purchase price. In that case the corporation was not concerned about the business in which the goods sold were to be used except in so far as it might be of advantage to it for its employes to have the opportunity to avail themselves of the accommodations of the boarding house; in other words, such remote interest as the employer of labor has in his employes enjoying opportunities of obtaining the necessities or conveniences of life, such as may be afforded by the operation of various lines of business in the vicinity of their work, for instance, boarding houses, grocery and dry goods stores, drug stores, meat markets, etc. In the present case, on the other hand, the Lumber Company was not only interested directly in the purchases made as the owner of the property on which the goods furnished were to be used, but it was vitally concerned in the continued operation of the business in which that property was used, as it is made to appear that it was necessary for the Transportation Company to obtain the supplies and materials furnished on the notes sued on to enable it to continue to render for the Lumber Com-

pany a service essential to the carrying on of the latter's business. The averments of the amended complaint in this case fairly shows that the Lumber Company, in indorsing the notes given for materials and supplies furnished to the Transportation Company, was not extending a gratuitous accommodation for the benefit of a business in which it had no interest, but was serving a purpose of its own by entering into an engagement having the object and purpose on its part of securing for itself the continued enjoyment of suitable facilities for the transportation of its products to market.

The charter of a corporation, read in connection with the general law applicable to it, is the measure of its powers, and a contract manifestly beyond those powers will not sustain an action against it. But whatever, under the charter and other general laws, reasonably construed, may fairly be regarded as incidental to the objects for which the corporation was created, is not to be taken as prohibited.—*Green Bay & Minnesota R. Co. v. Union Steamboat Co.*, 107 U. S. 98, 2 Sup. Ct. 221, 27 L. Ed. 413; 10 Cyc. 1097.

It is not to be doubted that a manufacturing corporation may have the implied power, though no express power on the subject is conferred by its charter, to make necessary or suitable arrangements for the carriage of its products to market, and that it may bind itself by such engagements as are reasonably appropriate to that end. It is of vital concern to such a corporation to have suitable means of reaching the markets for its products. Such a business cannot live without adequate transportation facilities. Even a suspension of such facilities means a paralysis of the business dependent upon them so long as the suspension lasts. The necessity for the exercise at times by a business corporation of the power of making arrangements for such

means of transportation as the nature of its business may require has been recognized in decisions of the courts and in statutes. In the case of *Ft. Worth City v. Smith Bridge Co.,* 151 U. S. 294, 14 Sup. Ct. 339, 38 L. Ed. 167, it was held that a Texas corporation, organized for the purposes of purchasing, subdividing, and selling lands, which owned land near the city of Ft. Worth, separated from the city by the Trinity river, had the power, as fairly incidental to the main object of its incorporation, to make a contract with a bridge company to pay one-third of the cost of a bridge to be built over Trinity river to connect its land with the city, even though the bridge was to be public property. In this state there is a general statute which unequivocally recognizes the existence of this essential need of such a corporation as the one whose contract now is brought into question. Section 3496 of the Code, provides that "any railroad corporation, and any mining, manufacturing, or quarrying corporation, may at any time, by means of subscription to the capital stock of any other corporation or company, or otherwise, aid such corporation or company in the construction of its railroad for the purpose of forming a connection with the railroad, or the principal place of business or works of the corporation furnishing the aid." Under that provision it was within the power of the Lumber Company, being a manufacturing corporation, at any time, by means of subscription to the capital stock of another corporation, or otherwise, to aid such a corporation as the Transportation Company in the construction of such a railroad as the latter company was operating; in other words, to embark its capital, to risk its all in a railroad enterprise wholly under the control of another and independent corporation. Such rulings and such statutes as have just been referred to persuasively suggest that

such a manufacturing corporation as the Lumber Company, engaged in the business and situated as it was, as shown by the averments of the amended complaint, in entering into an engagement reasonably calculated to secure its continued enjoyment of convenient means of getting its output into the channels of commerce, cannot well be said to have been dealing with a matter in which it had only such a remote and indirect concern as a similar corporation was shown in the *Gulf Yellow Pine Lumber Company Case, supra,* to have had when it lent its credit for the furtherance of another's boarding house project. As was said in the opinion in the case of *Best Brewing Co. v. Klassen,* 195 Ill. 37, 57 N. E. 20, 50 L. R. A. 765, 76 Am. St. Rep. 26, "many acts can be suggested which, though beneficial to the business of a corporation, are too remote from its general purposes to be deemed reasonably within its implied powers. What is and what is not too remote must be determined according to the facts in each case." The case of *Gulf Yellow Pine Lumber Co. v. Chapman & Co., supra,* is an instance of an attempt to bind a corporation by a contract the inducement or consideration for which was so remote from the objects for which the corporation was created that no liability was thereby imposed upon it. We are of opinion, on the other hand, that in the present case it is made to appear that the Lumber Company had such an interest in the consideration supporting the notes sued on that by its indorsement of those notes it was promoting an object of its own, not foreign to the main purposes of its organization, but one in which it was directly and vitally interested.

It does not necessarily result from the fact that the materials and supplies for the price of which the notes were given were furnished to another corporation, for use by it in its own independent business, that the Lum-

ber Company did not have such an interest in their being so furnished that it could make itself also liable for them. The form of the contract does not seem to be very material when the inquiry is as to whether it is one upon which a private corporation may be held liable. The main point of inquiry in such case is as to whether the contract was in legitimate furtherance of the purposes and business of the corporation sought to be charged. This was recognized in the following statement contained in the opinion of Brickell, C. J., in the case of *Steiner & Lobman v. Steiner Land & Lumber Co., supra*, made in immediate connection with the statement above quoted from that opinion: "There are cases in which the indorsement of the paper of others has been upheld, but in each instance the transaction was but the means adopted to carry out the legitimate objects of the corporation and conduct its authorized business, made necessary or expedient by peculiar circumstances." It is true that the court found that no such circumstances existed in that case, and that the proposition referred to in the above quotation was not involved in the decision rendered. But the statement evidenced a recognition by the court of the kind of circumstances in which a corporation may bind itself by indorsing the paper of another. Its suggestion, as applicable to the facts of the present case, is that the fact that a note was supported by a consideration moving direct to the corporation that made it does not constitute a good reason for denying the validity of the undertaking of its indorser, another corporation, to which also a special benefit accrued as a result of the transaction. This proposition is supported by well-considered adjudications in other jurisdictions, and, so far as we are advised, is not at variance with any authoritative ruling in this state. In the note to the case of *In re Assignment Mutual etc., Ins.*

[Cunningham Hardware Co. v. Gama Transportation Co. et al.]

70 Am. St. Rep. 149, 164, reference is made to authorities supporting the proposition that it is not ultra vires for a corporation to enter into contracts of guaranty and suretyship when it does so in legitimate furtherance of its chartered purposes. One of the cases there cited (*Mercantile Trust Co. v. Kiser,* 91 Ga. 636, 18 S. E. 358) in some respects bears a striking analogy to the present one. In that case it was held that it was a sufficient consideration to support a guaranty by a sawmill corporation of the bonds of a railway company that the former thereby secured the construction and operation of a railway penetrating its timber lands, which was essential to the successful prosecution of its business. In the two cases of *Marbury v. Kentucky Union Land Co.,* 62 Fed. 335, 10 C. C. A. 393, and *Humboldt Min. Co. v. American Mfg., Mining & Milling Co.,* 62 Fed. 356, 10 C. C. A. 415, the same court had occasion to pass upon the question, presented by different and contrasted states of fact, of the liability of a corporation on its guaranty of the contract of another. The opinion in each of the cases was delivered by Circuit Judge Taft, now President Taft. In the first mentioned case, which in some of its features was similar to the present one, it was held after full consideration that the corporation was liable on the ground that the obligation assumed was an appropriate method of advancing a legitimate purpose of its own; while in the other case the opposite conclusion was reached, because the object promoted by the contract was regarded as beyond the legitimate scope of the business of the corporation sought to be charged.

What has been said above disposes of the only ground of the demurrer to the amended complaint which the counsel for the appellees have sought to support by argument. In the course of their argument they call at-

tention to alleged insufficiencies in the averments of the complaint as amended as to matters not specified in the demurrer. Such criticism cannot avail anything on this hearing. The question now for decision is whether the complaint as amended was subject to demurrer on either of the grounds assigned. The ruling of the trial court cannot be sustained because of the existence of defects in the amended complaint which were not pointed out by the demurrer to it.—*Bryant v. Alabama Great So. R. Co.,* 155 Ala. 368, 46 South. 484. What has been said indicates the grounds of the conclusion reached that the demurrer should not have been sustained.

Reversed and remanded.