**FARMERS' LIFE INS. CO. v. FOSTER BUILDING & REALTY CO. et al.**

**JONES v. FARMERS' LIFE INS. CO. FARMERS' LIFE INS. CO. v. FOSTER BUILDING & REALTY CO.**

(Circuit Court of Appeals, Fifth Circuit. May 18, 1921.)

Nos. 3640, 3651.

1. **Insurance ☞36—Fact that building was equipped to heat another building does not make its acquisition ultra vires.**

The fact that a building acquired by an insurance company was equipped with a heating plant designed to heat an adjoining building also does not make the acquisition of such building an ultra vires act, where the company was authorized by Rev. St. Tex. 1911, art. 4735, to acquire and own one building site and office building for its use, and for lease and rental.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Insurance ⊂⇒36—Authority to acquire building implies authority to dispose of surplus heat.**

A life insurance company, which had authority to acquire an office building equipped with a plant designed to furnish more heat than was required by the building, has authority to dispose of the surplus heat.

**3. Insurance ⊂⇒36—Long-term contract for disposition of surplus heat held within power to acquire building.**

An insurance company, which was authorized to acquire an office building for its use and for lease and rental, and which acquired a building equipped with a heating plant capable of furnishing surplus heat, could legally do whatever might fairly be regarded as incidental or auxiliary to the care and management of the building, which included the authority to enter into a long-term contract with the owner of an adjoining building to heat the latter building with the surplus heat.

**4. Steam ⊂⇒5—Openings in wall connecting with other building held breach of contract for heating of building.**

An owner of an office building, who had a contract for the heating of that building, which expressly required heat to be furnished for a theater therein at times when it was not necessary for other parts of the building, breached his contract by permitting openings to be cut in the wall between his building and an adjoining building, through which heat could pass when the latter building was not heated at the time necessary to heat the theater, so that the load on the heating plant was increased.

**5. Steam ⊂⇒5—Breach of heating contract, which can be compensated by damages, does not authorize cancellation.**

A breach of a contract for the heating of a building by permitting openings to be cut in the wall between it and an adjoining building is one for which the furnisher of the heat can be adequately compensated by damages for the additional load on his heating plant, and therefore does not authorize a cancellation by equity of the heating contract.

**6. Specific performance ⊂⇒89—Party in default cannot have relief.**

The owner of a building cannot sue for specific performance of a contract for the heating of a building, where he had breached the contract by permitting alterations which increased the load on the heating plant until he compensated the other party to the contract for the damages sustained in the past by the breach and restored the building to its original condition.

**7. Estoppel ⊂⇒92(2)—Acceptance of benefits of contract held to preclude attack on authority to acquire property subject to contract.**

The owner of a building, which was heated by the heating plant of an adjoining building, is estopped to attack the authority of an insurance company to acquire the building in which the heating plant was located, where he had for several years received the heat under his contract and made payments therefor, and had brought suit against the subsequent owner to enjoin repudiation of the contract.

**8. Landlord and tenant ⊂⇒86(1)—Option to renew lease held to have been ratified.**

Where at the time a lease of space in an office building was executed, the lessee was given an option to renew for a stated term on condition that he make certain specified alterations in the building, after which he was to be entitled to the use of the basement space rent free, the acceptance of rent by the corporate owner of the building, with knowledge that the alterations had been made and that the lessee was occupying the basement space, was a ratification of the option for extension of the lease.

Appeals from the District Court, of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

Separate suits by the Farmers' Life Insurance Company against the Foster Building & Realty Company and Jesse H. Jones, and by the

Foster Building & Realty Company against the Farmers' Life Insurance Company, which were tried together. From the decree rendered in the first suit, the Farmers' Life Insurance Company and Jesse H. Jones both appeal, and from the decree for complainant in the second suit the Farmers' Life Insurance Company appeals. Decrees affirmed in part, and reversed in part.

Case No. 3640:

Lewis R. Bryan, of Houston, Tex., for plaintiff.

W. O. Huggins, of Houston, Tex., for defendants.

Case No. 3651:

Lewis R. Bryan and A. D. Dyess, both of Houston, Tex., for appellant.

W. O. Huggins, of Houston, Tex., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. The Farmers' Life Insurance Company (herein referred to as the Farmers' Company) brought a suit in equity against the Foster Building & Realty Company (herein referred to as the Foster Company) and Jesse H. Jones, for the cancellation of three contracts, namely: (1) One dated December 20, 1916, between Guarantee Life Insurance Company (herein called the Guarantee Company), the Farmers' Company's predecessor in title to an office building in Houston, Tex., known as the Mason Building, and the Foster Company, whereby the former agreed to furnish heating service for the Foster Building, a theater and office building belonging to the Foster Company, and adjoining the Mason Building, for the period of 25 years, beginning on the 1st day of January, 1917, at $75 per month, the contract providing for a lien on the Mason Building to secure faithful performance; (2) another of the same date between said Jones and the Guarantee Company, whereby Jones agreed to supply electrical energy for lighting and power service for the Mason Building for the period of 25 years from January 1, 1917; and (3) one dated July 16, 1916, between the Guarantee Company and said Jones, whereby the former gave the latter an option to extend for an additional term of 5 years a 5-year lease of the same date to him of part of the Mason Building. A separate suit was brought by the Foster Company against the Farmers' Company to enforce the above-mentioned contract for supplying heat, etc., to the Foster Building, and to compel the Farmers' Company to furnish heat in accordance with the terms of that contract. The two suits, without being consolidated, were tried together.

By the decree in the first-mentioned suit the relief sought as to the heating contract and the electrical energy contract was denied, and the contract whereby Jones was given an option to renew the above-mentioned lease to him was canceled. By the decree in the other suit the Farmers' Company was enjoined from shutting off the heat supplied by its plant to the Foster Building; the decree, however, providing for the Farmers' Company having the right to apply in the future for a modification or dissolution of the injunction granted upon showing that by

any act or acts of the plaintiff in that suit or its successor in the ownership of the Foster Building conditions in that building affecting the heating of it have been changed, without the consent of the defendant in that suit and to its detriment, from what they were on December 20, 1916, when the heating contract was made. The Farmers' Company appealed from the decree in the first-mentioned suit, and by assignment of errors complains of that decree so far as it failed to grant relief prayed for in the bill in that case. Said Jones appealed from the decree in that suit, and by assignment of errors complains of the part of it which canceled the contract giving him an option to renew the above-mentioned lease to him. The Farmers' Company appealed from the decree in the other suit and assigns as error the rendition of that decree.

So far as the decree in the first-mentioned suit denied the relief sought as to the electrical energy contract, it is not subject to reversal, because, as stated in the memorandum opinion of the trial judge, there was "no proof concerning the same which raises any equity in the plaintiff." The remaining matters to be considered are the rulings of the court with reference to the heating contract and the contract giving Jones an option to renew his lease.

The Guarantee Company was a life insurance company incorporated under the law of Texas, having the right to acquire and own "one building site and office building for its accommodation in the transaction of its business and for lease and rental." Revised Statutes of Texas, art. 4735. In June, 1915, it became the owner of the Mason Building. At that time the Mason Building contained a heating plant and equipment so devised and arranged as to be capable of providing heat for both the Mason Building and the adjoining 10-story Foster Building. By a contract made in December, 1914, the Guarantee Company's predecessor in ownership of the Mason Building agreed to furnish the Foster Company heating service, etc., for the Foster Building, including the theater therein, for the period of 25 years from the date of that contract for the sum of $50 per month. The service called for by that contract was rendered under it until the above-mentioned contract, whereby the Guarantee Company agreed to furnish heat for the Foster Building, went into operation.

[1, 2] We are not of opinion that the Guarantee Company, in making the last-mentioned contract, undertook to do a thing which was beyond its corporate power. As above stated, it was expressly empowered to acquire and own an office building for its own use and for lease and rental. The fact that the Mason Building contained a heating plant constructed with a view to its supplying heat for both that building and the adjoining Foster Building did not have the effect of making the Mason Building one which the Guarantee Company was legally incapable of acquiring and holding. Having legally become the owner of an office building containing a heating plant constructed with a view to heating both that building and an adjoining one, certainly it was not beyond the power of the Guarantee Company to dispose of the surplus heat from its plant.

[3] But it is contended that it could not legally obligate itself to furnish heat to the Foster Building for a long term of years. It could

legally do whatever may fairly be regarded as incidental or auxiliary to, or expedient or profitable in, the care and management of the office building which it was authorized to acquire and hold. The grant of the power to acquire and hold such a building carried with it by implication the right to do whatever a natural person similarly situated might reasonably and lawfully do in the use and management of such property. If a natural person had become the owner of the Mason Building, and had made such a contract as the one in question, it would be supposed, in the absence of evidence to the contrary, that he did so because he reasonably considered that the making of such a contract was expedient and profitable in the use of his property. It well may be more economical and to the advantage of all parties concerned for two adjoining office buildings to be heated from one plant instead of two. Under the circumstances disclosed, the act of the Guarantee Company in obligating itself to furnish heat from its plant to the Foster Building is to be regarded as incidental and auxiliary to the reasonable use and management of property which it was empowered to acquire and hold. Jacksonville, M. & P. R. Co. v. Hooper, 160 U. S. 514, 16 Sup. Ct. 379, 40 L. Ed. 515; Fort Worth City Co. v. Smith Bridge Co., 151 U. S. 294, 14 Sup. Ct. 339, 38 L. Ed. 167; 14a Corpus Juris, 254 et seq.

[4] The Foster Building is located between two similar office buildings, the Mason Building and the Gulf Building. When the heating contract in question was made, the Foster and Gulf Buildings were separated by a party wall; there then being no openings or connections between those buildings. Since that contract was made those buildings have been connected with each other by making a number of openings in the party wall between them. This was done without the consent of the Farmers' Company. The evidence adduced was such as to require the conclusion that the load upon the heating plant in the Mason Building was increased as a result of making the openings between the Mason and Gulf Buildings; a consequence of the changes made being to require an increased amount of fuel to heat the Foster Building as required by the contract. More heat was required by adding to the space reached by the heat supplied. There was expert testimony having some tendency to prove that, when both the heating plant in the Gulf Building and the plant in the Mason Building are so operated as to create the proper temperature in the buildings served by those plants, the openings between the Foster and Gulf Buildings do not have the effect of appreciably increasing the load on the heating plant in the Mason Building.

But the evidence without conflict showed that the heating plant in the Gulf Building is not in operation during considerable periods of time when the heating plant in the Mason Building must be kept in operation to furnish the heat called for by the contract in question. That contract specifically calls for the heating of the theater on the ground floor of the Foster Building at times when heat may not be needed in other parts of the building. Because of that requirement the plant in the Mason Building must be kept in operation until 9 or 10 o'clock every night, including Sundays and holidays, while the operation of the

plant in the Gulf Building ceases by 7 o'clock every evening and by 1 o'clock in the afternoon on Sundays. The contract bound the Guarantee Company to heat the Mason Building as it was at the time the contract was entered into. The Foster Company impliedly agreed not to make changes in its building having the effect of requiring more fuel to heat it, or otherwise making the rendition of the heating service more expensive or burdensome. It breached its contract when, by making, or allowing the making of, openings between its building and the Gulf Building, it added to the space to be heated from the plant in the Mason Building when the plant in the Gulf Building is not in operation.

[5, 6] From the fact that the Foster Company so breached the contract it does not follow that the Farmers' Company is entitled to have the contract canceled. It was not made to appear that the remedy at law for such breach is inadequate. The equitable remedy of cancellation is not awarded for mere breaches of contract for which adequate redress may be had at law. On the other hand, the Foster Company was not entitled to require specific performance by the Farmers' Company while the former was in default as to its implied obligation not so to change the features or conditions of its building affecting the heating of it as to make the rendition of that service substantially more difficult and expensive than it was under the conditions existing when the contract was made. The injunction granted by the decree in the suit brought by the Foster Company had the effect of requiring specific performance of the heating contract by the Farmers' Company. The Foster Company was not entitled to equitable relief while it was permitting the continuance of changed conditions in its building which made the heating of that building more difficult or expensive than it was before such changes were made. The granting of whatever, if any, equitable relief that might properly be awarded the Foster Company to enable it to get the benefit to which the contract entitled it, should be conditioned upon its doing equity by paying the damages, if any, already sustained by the Farmers' Company in consequence of the openings between the Foster and Gulf Buildings and by having those openings closed within a reasonable time to be fixed by the court. Whether heat supplied by the Farmers' Company does or does not find its way into the Gulf Building when the heating plant in that building is in proper operation, it seems that the making of the openings between the Foster and Gulf Buildings materially changed the conditions affecting the heating of the Foster Building, because a result was to make the retention in that building of heat supplied thereto dependent on conduct of a party not subject to the control of the Farmers' Company.

[7] In behalf of the Foster Company an attack is made in argument on the validity of the transaction whereby the Farmers' Company acquired from the Guarantee Company the Mason Building and the latter company's rights under the heating contract mentioned. That transaction was an executed one, having no executory feature or provision now sought to be enforced, and it was consented to by all the stockholders of the Guarantee Company. That being so, it seems that after it was so executed only the state could question its validity on the

ground that the Guarantee Company exceeded its corporate powers in entering into it. But, if the Foster Company ever had the right to question the validity of that transaction, it has lost that right by conduct having the effect of a ratification by it. With full knowledge of the facts it has dealt with the Farmers' Company as the party obligated to furnish heat for the Foster Building, has accepted the benefits of the rendition by the Farmers' Company of the service called for by the heating contract and is now before this court seeking to sustain a decree in its favor which requires the Farmers' Company to continue to render that service.

[8] The contract whereby Jones was given the option of renewing his 5-year lease was made on the same day that the lease contract was made, the two contracts apparently being parts of one transaction, though they are evidenced by separate instruments. After managing officials of the Farmers' Company learned of the existence and terms of the option contract, that company continued, and still continues, to accept from Jones the rent which the lease contract obligated him to pay. The lease was of a described part of the ground floor of the Mason Building at a monthly rental of $1,350, and it gave Jones the right to make changes or alterations in the front or entrance of the building, and to install partitions, subdividing the rented space, as shown on a sketch or plan attached to the lease. The option contract, after reciting that it was made "in consideration of the agreements and undertakings of Jesse H. Jones, as contained in that lease contract this day executed between him and Guarantee Life Insurance Company * * * and as a part of said lease contract," specified how Jones was to subdivide and arrange the entrance and lobby of the building to be entitled to have the option to renew his lease, and provided that if a specified arrangement of such space should be made by Jones, he was to have free use of described space in the basement of the building.

The evidence showed that soon after the lease and option contracts were made Jones arranged the entrance and lobby as required by the latter contract to entitle him to the option to renew his lease, and took, and has continued in, possession of the basement space to which the option contract entitled him in that event. From the time the officers and directors of the Farmers' Company took charge of the Mason Building, it was open to their observation that Jones was using part of the building not mentioned in the lease to him. The language of the option contract informed them how Jones was entitled to the use of that space, and that the giving of the option was part of the consideration for the agreements and undertakings of Jones expressed in the lease contract. In paying his monthly rental Jones was paying for the option, and for the use of space not mentioned in the lease, as well as for the space called for by the existing lease. The Farmers' Company could not, with full knowledge of the facts, accept the benefits of compliance by Jones with his obligations and remain free to withhold the whole or part of the consideration supporting those obligations.

Where a corporation, with full knowledge of all material facts, takes and retains the benefits of an unauthorized contract made in its name

by its officer or agent, it thereby ratifies, and becomes bound by, such contract. Jacksonville, etc., R. Co. v. Hooper, 160 U. S. 514, 16 Sup. Ct. 379, 40 L. Ed. 515; Taylor v. A. & M. Association, 68 Ala. 229; 14a C. J. 387. Under the circumstances disclosed the continued acceptance by the Farmers' Company from Jones of the stipulated monthly rent had the effect of a ratification by the former of the option contract in question. The evidence does not disclose a state of facts warranting the cancellation of that contract at the instance of the Farmers' Company.

For reasons above indicated the decree in the suit brought by the Farmers' Life Insurance Company is affirmed, in so far as it denied the relief sought as to the electrical energy and the heating contracts, and is reversed in so far as it canceled the contract giving said Jones the option to renew the above-mentioned lease to him, the costs to be taxed against the plaintiff below in that suit; and the decree in the suit brought by the Foster Building & Realty Company, under the agreed statement as to the record and issues and the question of ultra vires raised by the assignment of errors, is affirmed, but with directions to the court so to modify that decree as to make it conform to views expressed in this opinion, with costs in this court against the appellant in the last-mentioned suit.

Affirmed in part. Reversed in part.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes