GREEN BAY AND MINNESOTA RAILROAD COMPANY *v.*
UNION STEAMBOAT COMPANY.

A railroad corporation, whose railroad extends across the State of Wisconsin from Lake Michigan to the Mississippi River, and which is authorized, by its charter, to make "such contracts with any other person or corporation whatsoever as the management of its railroad and the convenience and interest of the corporation and the conduct of its affairs may in the judgment of its directors require;" and, by general laws, to make such contracts with any railroad company, whose road terminates on the eastern shore of Lake Michigan, "as will enable them to run their roads in connection with each other in such manner as they shall deem most beneficial to their interest," and "to build, construct, and run, as part of its corporate property, such number of steamboats or vessels as they may deem necessary to facilitate the business operations of such company or companies;" and also "to accept from any other State or Territory of the United States, and use, any powers or privileges applicable to the carrying of persons and property by railway or steamboat in said State or Territory;" has the power, for the purpose of carrying passengers and freight in connection with its own railroad and business, to enter into an agreement with the proprietors of steamboats running, by way of the Great Lakes, between its eastern terminus and Buffalo in the State of New York, by which it guarantees that the gross earnings of each boat for two years shall amount to a certain sum.

ERROR to the Circuit Court of the United States for the Western District of Wisconsin.

The case is stated in the opinion of the court.

*Mr. Walter C. Larned* for the plaintiff in error.
*Mr. Francis J. Lamb* for the defendant in error.

MR. JUSTICE GRAY delivered the opinion of the court.

This is an action brought by the Union Steamboat Company, a corporation established by the laws of the State of New York at Buffalo in that State, against the Green Bay and Minnesota Railroad Company, a corporation established by the laws of the State of Wisconsin, and having its principal place of business in this State.

The declaration alleges that the defendant was chartered in 1866, and was organized to construct and operate a railroad across the State of Wisconsin east and west from the city of Green Bay to the Mississippi River, and its road was built and actually opened for business in December, 1873; that "it became important for said defendant to make arrangements, in

regard to the business of carrying passengers and freight carried eastwardly over its road and destined for points east of said city of Green Bay and out of the State, for their transportation east, as well as to secure business of carrying passengers and freight arriving at or being moved west by way of the defendant's route and railway ; " and on the 9th of September, 1873, the plaintiff and defendant entered into a contract under seal, whereby, in consideration that the plaintiff would, during the season of navigation in 1876 and in 1877, run between Buffalo and Green Bay, by the way of the Great Lakes, and touching at intermediate ports, two steam propellers, then belonging to the plaintiff, for the purpose of carrying passengers and freight to and from Green Bay, in connection with the defendant's railway and business and docks at that place, the defendant duly undertook and guaranteed to the plaintiff that the gross earnings of each propeller in such business should be for each of the two years the sum of $45,000 at least, and that, if it should be less, the defendant would pay the difference to the plaintiff on or before the first of January next succeeding the close of navigation in each year.

The plaintiff further alleges that it duly put the propellers on the route and kept them running thereon, in connection with the defendant's business and in accordance with the contract, during the seasons of 1876 and 1877, and in all respects duly performed all the conditions of the contract on its part ; that the gross earnings of each propeller for each season fell short of the amount guaranteed by a certain sum named, which thereupon became due and payable to the plaintiff from the defendant, according to the contract, on the first of January following ; and that the two corporations were duly authorized and empowered by their respective charters and the laws of Wisconsin to make the contract.

The answer denies that the defendant was so empowered, and avers that it has no information or knowledge sufficient to form a belief as to whether the plaintiff was so empowered ; admits the making of the contract stated in the declaration, and sets forth other provisions of that contract, with which it alleges that the plaintiff had not complied. The plaintiff filed a replication denying the allegations of the answer. Upon a

trial in June, 1878, a verdict was returned for the plaintiff for $78,876.13, and judgment rendered thereon, and the defendant sued out this writ of error.

No bill of exceptions having been seasonably tendered, the only question presented by the record is whether, under the general laws of the State of Wisconsin, and the defendant's charter, which by those laws, as existing at the times of the granting of the charter and of the trial; Revised Statutes of 1858, c. 5, sect. 2 ; was declared to be a public act, the contract sued on, as set forth in the declaration and admitted in the answer, is *ultra vires* of the defendant corporation.

The general doctrine upon this subject is now well settled. The charter of a corporation, read in connection with the general laws applicable to it, is the measure of its powers, and a contract manifestly beyond those powers will not sustain an action against the corporation. But whatever, under the charter and other general laws, reasonably construed, may fairly be regarded as incidental to the objects for which the corporation is created, is not to be taken as prohibited. *Thomas* v. *Railroad Co.*, 101 U. S. 71; *Attorney-General* v. *Great Eastern Railway Co.*, 5 App. Cas. 473 ; *Davis* v. *Old Colony Railroad Co.*, 131 Mass. 258.

The railroad of this corporation extends across the State of Wisconsin from its eastern boundary on Lake Michigan to the Mississippi River ; and its charter empowers the directors to make such agreements with any person or corporation whatsoever " as the construction of their railroad or its management and the convenience and interest of the company and the conduct of its affairs may in their judgment require." Private Laws of Wisconsin 1866, c. 540, sect. 7. It was within the powers of the corporation, as incidental to its own proper business, to agree to transport as a carrier, over connecting railroad and steamboat lines, passengers and freight intrusted to it for carriage over its own line. *Railway Company* v. *McCarthy*, 96 U. S. 258. The general laws of Wisconsin, in force at the time of the grant of this charter, authorize any railroad company in this State to make such contracts with any railroad company, whose road terminates on the eastern shore of Lake Michigan within the State of Michigan, " as will enable said companies

to run their roads in connection with each other in such manner as they shall deem most beneficial to their interest," and " to build, construct, and run, as a part of their corporate property, such number of steamboats or vessels as they may deem necessary to facilitate the business operations of such company or companies." General Laws of Wisconsin 1853, c. 76. And by the general railroad act of 1872, " any railroad company, heretofore or hereafter incorporated by or under the laws of this State, may exercise all its rights, franchises, and privileges in any other State or Territory of the United States, under and subject to the laws of the State or Territory where it may exercise, or attempt to exercise, the same, and may accept from any other State or Territory, and use, any additional or other powers or privileges applicable to the carrying of persons and property by railway or steamboat in said State or Territory, or otherwise applicable to the doings of said company in said State or Territory." General Laws of Wisconsin 1872, c. 109, sect. 51.

These statutes show that the legislature of Wisconsin, recognizing the fact that, from the geographical situation of the State, the railroads which traverse it from east to west form part of a line of transportation extending across the continent, intended to confer upon the corporations owning such railroads very large powers of contracting with other corporations owning railroads or steamboats, whose course includes connecting parts of the same great line of transportation.

To build and run, as part of the defendant's corporate property, such number of steamboats on Lake Michigan as it might deem necessary to facilitate its business, would be within the power expressly conferred by the statute of 1853 ; and we are of opinion that, taking into consideration all the statutes above quoted, it was equally within its corporate powers to hire, either by the trip or by the season, steamboats belonging to others, running from its eastern terminus along the Great Lakes eastward ; or to employ such steamboats to carry passengers and freight, in connection with its own railroad and business, under an agreement by which it guaranteed to the proprietors of the boats that their gross earnings for the season should not fall below a certain sum.

There is therefore nothing in the record before us to show that the agreement sued on was beyond the corporate powers of this railroad company.

Judgment affirmed.