113  311
120  544

113  311
s124  296

113  311
127  325

113  311
136  ²618

113  311
143  ² 67

### SULLIVAN *v.* ROSS' ESTATE.

1. JUDGMENT—RES JUDICATA—CLAIMS AGAINST ESTATES.

   The Supreme Court reversed a judgment in favor of one who had appealed to the circuit court from the disallowance by commissioners of his claim against a decedent's estate, for error in permitting a recovery upon an alleged oral contract, when, as was found, claimant's own evidence showed a contract in writing. Thereafter, permission to amend the pleadings so as to set up a breach of trust under the written contract was refused by the circuit judge, and *mandamus* to compel the allowance of the amendment was denied in the Supreme Court, without discussion of the merits. The claim sought to be so interposed was subsequently disallowed in the probate court, and an appeal was taken to the circuit. *Held,* that the effect of the previous decision was not to render the controversy *res judicata,* but merely to determine what should be the basis of the judgment, and that the denial of *mandamus* did not affect the issue.

2. ELECTION OF REMEDIES—MISTAKE.

   While it is true that a person is bound by an election between two inconsistent remedies, one having a meritorious claim, who mistakes his remedy, and attempts to enforce it in an inappropriate action, wherein no recovery can be had, is not precluded thereby from resorting to his proper remedy.

3. SAME—DECEPTION OF COURT—PUBLIC POLICY—ESTOPPEL.

   The prosecution of a claim against a decedent's estate for the purchase price of logs alleged to have been sold and delivered to decedent under an oral agreement, though carried on with knowledge that the claim as presented is unfounded, and with an intent to deceive the court by keeping it in ignorance of a written contract by which the relations of the parties are defined, will not, on grounds of public policy, estop the claimant from thereafter asserting his rights under the written contract, and from seeking a recovery based upon the breach of a trust thereby created. GRANT, C. J., dissenting.

4. ESTATES OF DECEDENTS—PRESENTATION OF CLAIMS—ACCOUNTING —EQUITY.

   A claim for an accounting against an estate on a contract

creating a trust relation between claimant and decedent, where the transactions were all completed during decedent's lifetime, and were of such a character that, had he lived, the entire controversy could have been settled in a court of law, may be presented in probate court, without a resort to equity.

Error to Marquette; Stone, J. Submitted January 13, 1897; original opinion, for affirmance, June 7, 1897. Rehearing granted April 5, 1898; reargued June 7, 1898; final opinion, overruling the earlier one, September 20, 1898.

Thomas G. Sullivan presented a claim against the estate of James G. Ross, deceased. The claim was disallowed by the probate judge, and claimant appealed to the circuit court. From a judgment for defendant on verdict directed by the court, claimant brings error. Reversed.

The facts, merits, and contention involved in this suit are fully stated and discussed in an exhaustive opinion by Chief Justice McGRATH in 98 Mich. 570, which was concurred in by the entire court. After that opinion was rendered, the claimant made a motion in the circuit court for leave to amend his claim, based upon the theory that Ross & Co. had violated the agreement of June 24th, and that "in the execution of the trust [created thereby] they did not exercise reasonable care, but, on the contrary, carelessly, negligently, and recklessly lost a portion of said logs, of the value of $40,000, and carelessly, negligently, and recklessly sawed the balance of said logs into lumber, whereby the lumber was worth $40,000 less than it would have been if said logs had been cut into lumber with reasonable care." Other matters are set up in the motion, but the above quotation states the principal claim. This motion was denied by the circuit court for the following reasons:

"(1) In the exercise of the discretion which the court has to grant amendments for the furtherance of justice, I

do not think that the ends of justice would be promoted, nor the cause of justice encouraged, to continue this litigation. Further, it seems to me that the Supreme Court has disposed of the case upon the merits, and that claimant is not in a position to better his standing in this court by an amendment of his claim.

" (2) The claimant has elected his cause and remedy. He alleged and swore to a sale and delivery of these logs after the contract of June 24, 1884, was produced. He having pursued this remedy and course, the other is gone. Not only does the averment of a sale and delivery amount to a solemn admission of a fact, but the claimant's testimony, often repeated, estops him from taking the position which he now, by amendment, seeks to assume. This cannot be permitted where the party has a choice of remedies or courses to take. Parties are bound by their written admissions made in the progress of a case, and cannot be permitted to repudiate them at pleasure. The same rule applies with equal force to the horses and other property.

" (3) To grant this motion would be to allow the claimant to enlarge and change the case presented to the commissioners. The claim now proposed was never passed upon by the commissioners. They passed upon the question of a sale; not on the conduct of a trustee. This court has no original jurisdiction over claims against estates of deceased persons. Such cases must come on appeal from the probate court, and nothing can be tried in the circuit court that was not presented to the commissioners. I think that the Supreme Court of this State has gone far enough upon this branch of the case to warrant me in denying the motion on this ground."

Claimant then petitioned this court for the writ of *mandamus* to compel the circuit court to allow the amendment. An order to show cause was granted, and upon the hearing the relief prayed for was denied. No written opinion was filed. Claimant then filed the present claim in the probate court, setting up substantially the same claim that was made upon the motion for leave to amend in the circuit court. It was again disallowed by the probate court, and appeal taken to the circuit court, which directed a verdict and judgment for the defendant upon the ground that claimant was seeking a remedy utterly inconsistent with the remedy pursued in his former suit.

*Moore & Moore* (*Ball & Ball* and *T. E. Tarsney*, of counsel), for appellant.

*Clark & Pearl* (*John D. Conely*, of counsel), for appellee.

GRANT, J. (*after stating the facts*). The circuit court was right in directing a verdict for the defendant.

1. The question was *res judicata*. The questions presented to the circuit court upon a motion to amend are precisely the same as those now presented. The court denied the amendment, whereupon the claimant filed his petition for a *mandamus* in this court. The questions were fully argued in briefs and orally, and the writ was denied, and the same reasons are now presented against the order of the court that were then presented.

2. Claimant in the former suit chose his remedy, and the law does not now permit him to assert another. Counsel cite several cases in support of the rule, about which there is no dispute, that "a judgment given against a plaintiff on the single ground that he has mistaken his remedy or form of action is no bar to his subsequent suit brought in the proper form." But these authorities do not cover the present case. Claimant presented his claim in the probate court upon the basis that he had sold his interest in these logs to Ross & Co. as 9,000,000 feet and at $9 per 1,000. He was defeated, appealed to the circuit, where two trials were had. Whatever may be said about his knowledge of the contract of June 24th upon the hearing in the probate court and upon the first trial in the circuit, he had such knowledge upon the second trial, and still insisted upon a sale,—a claim for which we held there was not the slightest foundation. If upon that trial verdict had been against him, would he have been permitted to bring another suit, based upon the trust relation? If he had set forth his claim in two counts in the declaration, one based upon the contract of sale, and the other based upon a breach of trust under the contract of June 24th, the court would, upon motion, have compelled him

to elect upon which count he would proceed. If he had elected, and been beaten upon the count so elected, would the court then permit him to bring suit upon the other count? Claimant stands in no better position than he would if he had put two such counts in his declaration. With full knowledge of all the facts, he deliberately chose his remedy, and put the estate to a very large expense in his attempt to sustain his claim. It is not a case of a mistake in the remedy, but a deliberate choice of remedies. The law does not permit litigants to thus play fast and loose, especially with the estates of dead men, but leaves them to lie upon the beds of their own making.

Judgment affirmed.

The other Justices concurred.

### ON REHEARING.

MOORE, J. The questions involved in this case up to February, 1894, are fully stated in *Sullivan* v. *Ross' Estate*, 98 Mich. 570. A reference to that case will make it unnecessary to repeat what is there stated. The case was here again, and is reported at page 311, *ante*. A reference thereto as to the history of the case subsequent to the events stated in 98 Mich. 570, will avoid the necessity of repeating many of the details of the case here. It was claimed on the part of the appellant that the case was wrongly decided, and a rehearing was ordered.

In the former opinion, *ante*, it was held—*First*, that the question involved in the case was *res judicata*; *second*, that claimant in his former suit chose his remedy, and the law does not now permit him to assert another. Upon the rehearing, careful and able oral arguments were made, and additional briefs were filed. In deciding the case, it may be well to go more into detail as to the history of the litigation prior to the advent of the case in this court, and to consider what was decided in 98 Mich. 570. It is well to remember at the outset that the case originated in the probate court, where claimant presented sev-

eral items which he sought to have allowed in his favor against the defendant estate. The principal item, and the one about which the principal controversy has arisen, was a claim for 9,000,000 feet of lumber, which he alleged was sold by an oral bargain to Mr. Ross, through one Connolly, his agent, for the sum of $81,000. He claimed there was due him from the estate, stated in round numbers, the sum of $70,000. The defendant admitted that Ross & Co. had received upwards of 7,000,000 feet of lumber belonging to plaintiff, but claimed that they made payments and advances to plaintiff to such an extent that not only they did not owe plaintiff anything, but plaintiff owed them upwards of $23,000. The estate denied that the lumber was sold by oral contract, and claimed that Ross & Co. received the lumber and disposed of it according to the terms of two written contracts made in the fall of 1883, supplemented by a written contract made in June, 1884. The claims of the parties were submitted by the trial judge to a jury, who returned a verdict in favor of the claimant, and in doing so must have found the oral contract to exist.

The opinion in 98 Mich. indicates clearly that the court were of the opinion that the written evidence made by the plaintiff himself was inconsistent with the existence of the oral contract, and was consistent only with the existence of the written contract. The judgment was reversed, and a new trial ordered. Up to this point it is clearly evident that the jury passed upon the relation of the parties upon the theory that the oral contract existed, and did not undertake to decide in whose favor the balance should be, or for what amount, upon the theory that the written contract was to control. It is also evident, as to this principal item, that it was presented to the probate court for a definite quantity of lumber, at a stated price, according to the terms of the alleged oral contract, and was not such an item as must be presented if it is to represent a claim for the lumber upon the theory that the transaction is to be controlled by the written con-

tract. After this court decided that the written contract
must control, and a new trial was ordered, claimant
attempted to amend his claim so as to bring it within the
contract this court said must control. The circuit judge
declined to permit the amendment, for the reasons stated
in the opinion, *ante*, and, upon an application for a *man-
damus*, this court declined to interfere. No written
opinion was filed, so the reasons for this action of the
court cannot be determined here. It might well be said
that the claim presented before the probate court and the
issue there made was not the same as the one which
would be presented if the amendment was allowed, and
for that reason the application for a writ of *mandamus*
was refused. I do not think it can be said that, because
of the *mandamus* proceeding, the question is *res judi-
cata*. Can it be said, because of the proceedings prior to
the decision in 98 Mich., that the question is *res judicata ?*

The plaintiff claimed a balance due growing out of the
oral contract. The defendant claimed that the written
contract should control, and that a balance was due it.
The jury found in favor of the plaintiff. This court
said they did wrong, because the written contract must
control, and ordered a new trial. The plaintiff then
sought to so frame the proceedings as to permit the case
to be heard upon the theory that the written contract
should control. He has not so far been able to do it. It
is very clear that a dispute exists between the parties as
to how much is due, and from whom, if the written con-
tract is to control. It is equally clear that that question
has never been passed upon by the court. The attitude
of the plaintiff is:

"Large dealings existed between us. I claimed the
oral contract should control. The court says I am wrong
in the claim, and the written contract must control. Con-
ceding it must control, defendant has had a large quan-
tity of my lumber, for which it owes me a large sum of
money; and as the defendant disputes my contention, and
claims I owe it, the question should be submitted to the
jury to decide."

The decision in 98 Mich. decides which contract shall control, but I do not think either it or the case as tried in the circuit court has decided what the judgment should be upon the basis of the written contract. The pleadings were not in such a condition that the issue thus stated could be tried. There has been no trial upon the merits of the controversy between these parties. The plaintiff sought to recover upon an oral contract. He had no right of action upon that contract, because the court has said that no such contract existed. Can it be said that defendant shall not be required to account for the proceeds of seven or eight millions of feet of lumber, which it admits it had, because plaintiff claims that the transaction was evidenced by an oral contract, when the court finds that no such contract existed, but that a written one did? I think the situation is stated in *McLaughlin* v. *Austin*, 104 Mich. 489:

" No rule is better settled than the proposition that one having the choice of two inconsistent remedies is bound by an election, and that suit brought upon one precludes a subsequent resort to the other claim. Thus, one may waive a tort by bringing an action in *assumpsit*, or may lose his right to bring *assumpsit* by commencing an action for the wrong committed. One may sometimes rescind a contract, and assert title to property that he has parted with, or he may affirm the contract, but he cannot do both. Having elected by bringing an action upon one theory, he has no right afterwards to sue upon the other. *Thompson* v. *Howard*, 31 Mich. 312, and cases cited; *Brown* v. *Littlefield*, 11 Wend. 467, 1 Wend. 398; *Morris* v. *Rexford*, 18 N. Y. 557; *M'Elroy* v. *Mancius*, 13 Johns. 121; *Sanger* v. *Wood*, 3 Johns. Ch. 416. This rule is not inconsistent with the practice of bringing a second and different action where it appears that the plaintiff never had a right of action as first brought, and therefore could not have elected. There is a difference between an election of remedies and a mistake of remedy, and the law has not gone so far as to deprive parties of meritorious claims merely because of attempts to collect them by inappropriate actions, upon which recovery could not be had. *Morris* v. *Robinson*, 3 Barn. & C. 196; *Peters* v. *Ballistier*, 3 Pick. 495; *Butler* v. *Hildreth*, 5 Metc. (Mass.) 49."

See *Fifield* v. *Edwards*, 39 Mich. 264; *McKinney* v. *Curtiss*, 60 Mich. 611; *Farwell* v. *Myers*, 64 Mich. 234; 2 Black, Judgm. § 715; *Chaddock* v. *Tabor*, (Mich.) 72 N. W. 1093.

It is said in the earlier opinion, *ante*, that claimant in the former suit chose his remedy, and the law does not now permit him to assert another. It will appear from the authorities already cited that if, in choosing his remedy, he has made a mistake, and for that reason failed, he is not cut off from pursuing the right remedy. And I think that is just what appears here. It is said that Mr. Sullivan has deceived the court, that he attempted to assert a claim which did not exist, and for that reason, upon grounds of public policy, he ought not to be heard in court again. The testimony was conflicting in relation to the circumstances surrounding the execution of the written contract, but the court has already said that written admissions made by Mr. Sullivan indicate clearly that the written contract was to control the parties. The record shows that this contract could not for a time be found. Considerable time elapsed while these transactions were going on. We all know how fallible men are, and how prone they are to believe what it is to their interest to believe. But suppose it be conceded that Mr. Sullivan was untruthful, and knew he was, in giving his testimony; while that fact is to be condemned, and would affect his testimony in any subsequent trial, can it be said that he has no right to have this controversy settled by the courts? He says that there are a good many thousand dollars due him. If that is true, is it a sufficient reply to say, "Even if there is, you have attempted to deceive the court, and for that reason it will not listen to you, and the defendant may keep what it has?" It is more in accordance with my sense of justice to hold that a jury should be allowed to say upon the merits, with an issue framed according to the rulings of the court, which of these parties owes the other.

It is urged that the claim should not have been presented in probate court, but that the aid of a court of

equity should be invoked.  Many cases are cited in support of this proposition, among others the case of *Sullivan* v. *Ross' Estate*, 98 Mich. 570.  I think, however, this case is easily distinguishable from the cases cited. The transactions in this case were all completed during the lifetime of Mr. Ross.  The lumber has all been sold, and a money judgment will satisfy all proper claims. *Wheeler* v. *Arnold*, 30 Mich. 304.  If Mr. Ross had lived, there would have been no difficulty in settling the entire controversy on the law side of the court.  There is nothing in the law questions involved that cannot be taken care of upon the law side of the court.  The plaintiff should have been allowed to go to the jury with his case.

The judgment is reversed, and a new trial ordered.

MONTGOMERY, HOOKER, and LONG, JJ., concurred with MOORE, J.

GRANT, C. J. (*dissenting*).  A re-examination of the authorities and of the record has confirmed me in the correctness of our former opinion.  Expressed in plain English language, the decision in 98 Mich. 570, rendered by Chief Justice McGRATH, means that Mr. Sullivan presented a false claim to the court, knowing it to be false, and subjected the estate to great expense for the different trials of that suit.  In order to recover now, he must take a position utterly inconsistent with the claim there made.  As I read the authorities, when one has deliberately and intentionally planted his suit upon one theory, and that theory a false one, and known to be false, the law does not permit him in a subsequent suit to recover upon another theory.  Besides, the present record shows that his present claim is utterly inconsistent with his conduct and acts, and is devoid of any justice or equity.  On the undisputed evidence, he is heavily in debt to the Ross estate unless he can make out a claim for tort arising from the alleged loss of logs and careless sawing at the mill at Sault Ste. Marie.  His own scale of the logs

was 7,511,077 feet. He wrote Mr. Ross, stating this to be the correct amount, that it was not as large as was anticipated, and asked for a reduction in price. He tried to make a sale based upon this scale. He now claims there were 9,000,000 feet. The record shows that about 7,000,000 feet were sawed and sold, thus showing that there was but a small loss in any event. It seems to me that the law puts the seal of condemnation upon such a course of conduct, and that courts should put an end to it.

I think the former opinion should be affirmed.