Columbia Trust Company, Plaintiff, *v.* Norske Lloyd Insurance Company, Limited, Defendant.

(Supreme Court, New York Special Term, July, 1917.)

Insurance (marine)— policy of — actions — estoppel — contracts — damages — when title to insured vessel does not pass.

An agreement for the sale of an insured vessel to one who is put in immediate possession, which provides that the title shall not pass until full payment of the purchase price, is not a sale or transfer to other ownership justifying the cancellation of the policy of marine insurance under a provision thereof that should the vessel be " sold or transferred to other ownership * * * this policy shall thereupon become cancelled from the date of sale or transfer."

In an action by the insured to recover for a loss covered by the policy the plaintiff is not estopped from claiming that there was no sale of the vessel, and that it was the owner at the time of its loss, by the fact that it had brought an action to recover the balance due on the purchase price, as by such action, as well as in defending an action brought by the vendee, the insured was only seeking to maintain such rights as it had under the contract of sale; nor does such action by the insured constitute an election of remedies which is a defense to the present action.

A valued policy of marine insurance is not to be treated as a contract of indemnity but rather in the nature of a contract to pay liquidated damages in case of loss, as to which the insured will not be allowed to recover more than the amount of the policy and the insurer will not be allowed to defend on the ground that the property insured was worth less than the agreed valuation.

Even if the policy were treated as a contract of indemnity it would be contrary to the fundamental principle of the doctrine of indemnity to hold that because the insured has for the purposes of a first group of insurance valued the vessel at a certain amount it cannot recover from any source more than that amount in case of loss, even though the actual loss was much in excess of such amount.

ACTION upon a policy of marine insurance.

Kellogg, Emery & Cuthell, for plaintiff.

Wendell P. Barker, for defendant.

ORDWAY, J.   The plaintiff is the assignee of a claim against the defendant for a loss covered by a valued marine insurance policy issued by the defendant on a vessel called *Libertad,* owned when the policy was issued by the Compania Zamorense de Navegacion, which company is also claimed to have been the owner of the vessel when she became a total loss on August 3, 1916, because of perils insured against by defendant's policy.

This is a motion by plaintiff for judgment on the pleadings, which will be taken to contain a true statements of the facts, because the defendant expressly admits all the allegations of the complaint and defends solely by separate defenses which also for the purpose of this motion are conceded to state the facts correctly.

The plaintiff's assignor, being the owner of the

*Libertad,* in April, 1916, effected insurance on that vessel in several insurance companies to an aggregate amount of $60,000 on an agreed valuation of $90,000, the plaintiff's assignor becoming a coinsurer to the extent of $30,000. The defendant participated in the above insurance to the extent of $3,500 by the policy in suit which contains the following clause:

" Should the vessel be sold or transferred to other ownership, then, unless the underwriters agree in writing to such sale or transfer, this policy shall thereupon become canceled from the date of sale or transfer."

After the issuance of the above policy and on or about June 1, 1916, and while it was in force, the plaintiff's assignor entered into an agreement to sell said vessel to one Fuss for $180,000, under which it received from Fuss $60,000 in cash and twelve promissory notes of $10,000 each, the first one payable June 10, 1916, and one on the tenth day of each month following, and upon the payment in full of the $180,000, and only then, should the title pass to Fuss. It was agreed that Fuss was to be and he was in fact immediately thereafter put in possession of the vessel, but that he should not acquire ownership thereof until full payment, until which the vessel " shall continue to be the property of the Compania Zamorense de Navegacion." By this agreement Fuss was to assume and pay the unearned portion of the premiums of the $60,000 of insurance, and in addition was to pay for an additional $60,000 of insurance to equal with the first $60,000 the part of the purchase price unpaid. This additional insurance was taken out by the plaintiff's assignor in its name as owner and in the policies covering the same the value of the vessel was fixed at $150,000. The agreement further provided that until full payment Fuss was bound to

intrust the command of the vessel to her captain, and in case of his resignation or discharge his successor should be appointed by mutual consent.

The notes which came due June 10 and July 10, 1916, were paid to the plaintiff's assignor by Fuss, so that the plaintiff's assignor has actually received $80,000 on account of its contract to sell. Thereafter and on August 3, 1916, the *Libertad* was lost at sea, and demands were made by the plaintiff's assignor against the insurers under the policies in the first mentioned group, and the plaintiff's assignor has collected the sum of $38,500 from some of those insurers, but while it has filed proofs of claim under the policies in the second mentioned group it has neither demanded nor collected anything from the second group of insurers.

The defendant having refused to pay the amount of its policy, this action was commenced, and defendant has set up three defenses:

*First.* That its policy was canceled by reason of the sale or transfer above mentioned.

*Second.* That Fuss has commenced an action against the plaintiff's assignor to recover back the purchase money paid on the above mentioned contract to sell, which action the plaintiff's assignor is defending; also that the plaintiff's assignor has commenced an action against Fuss to recover the balance due on the contract to sell, which action Fuss is defending.

*Third.* That the plaintiff's assignor, having received $80,000 on the purchase price of the vessel and $38,500 under the first group of insurance, has already received more than the agreed valuation of the vessel, viz., $90,000, and therefore has no further claim under the insurance policies in the first group. This defense also sets out the facts in regard to the

two groups of insurance effected on the vessel as above stated.

The first defense cannot be sustained. There has been no " sale or transfer to other ownership." The words in that clause " to other ownership " apply equally to " sale " and to " transfer," so that it should read " sale to other ownership or transfer to other ownership." While the vessel was delivered to Fuss, there was no " sale or transfer *to other ownership.*" The contract between the plaintiff's assignor and Fuss was only an agreement to sell and expressly retained the ownership in the plaintiff's assignor, and the contract itself was called a " contract of promise of purchase-sale." The title was not to pass and no evidences of title delivered until the whole purchase price was paid. This had not occurred when the vessel was lost, there still being $100,000 due. While Fuss had an equitable interest in the vessel and while he could transfer that interest, he had no legal " ownership." 35 Cyc. 651-654; *Hitchcock* v. *Northwestern Ins. Co.,* 26 N. Y. 68; *Lloyd* v. *North British & Mercantile., Ins. Co.,* 174 App. Div. 371, 376.

The policies in the cases cited by the defendant all have some distinguishing words. In *Brighton Beach Racing Association* · v. *Home Ins. Co.,* 113 App. Div. 728, the vital words are "if any change * * * takes place in the interest, title or *possession* of the subject of insurance." In *Germond* v. *Home Ins. Co.,* 2 Hun, 540, the words are " if the property insured should be sold or conveyed, or the *interest* of the parties therein be *changed.*" See *Savage* v. *Howard Ins. Co.,* 25 N. Y. 502; *Griffey* v. *N. Y. Central Ins. Co.,* 100 id. 417, 422.

While there is force in the defendant's argument that the personal equation enters very decidedly into

any insurance contract and that a change of possession to a party unknown to it might injure its interests, the fact still remains that it could easily have protected itself by inserting in the policy a clause prohibiting any *change of interest or change of possession* without its consent. This it has not done, and having prepared its own contract of insurance that contract will be construed strictly against it and a construction which works a forfeiture will not be given to it unless no other is permissible by the language used. *Darrow* v. *Family Fund Socy.*, 116 N. Y. 537, 544.

The second defense also cannot be sustained. Although it alleges evidence rather than a defense, I will assume that it pleads, as defendant contends, that the plaintiff's assignor has elected to regard its agreement with Fuss as a sale of the vessel and has in effect estopped itself from now claiming that there was no sale and that it was the owner of the vessel at the time of its loss. It is not alleged that the interposition of the answer of the plaintiff's assignor in the suit by Fuss, or the commencement of its suit against Fuss, took place before its assignment of this cause of action to the plaintiff in this action, and I do not see how acts of plaintiff's assignor subsequent to the assignment can be deemed to bind the plaintiff either as an election or by way of estoppel. But, even if such an allegation were contained in the answer, I do not think that the defense of the plaintiff's assignor to the Fuss action or the commencement of its own action against Fuss could be deemed to be a good defense to this action, either as an election or by way of estoppel. The plaintiff's assignor in defending the Fuss action and in commencing its action against Fuss is only seeking to maintain such right as it has under its contract with Fuss, and I find

nowhere in the pleadings in those actions any allega-
tion that can be construed as a statement that the
plaintiff had "sold or transferred" the vessel "to
other ownership." Nor does it constitute an election
of a remedy which will bar the prosecution of another
and different remedy that a plaintiff brings a suit on
a theory which the facts and the law do not permit
him to maintain. The doctrine of election of remedies
is founded on the principle that where the facts and
the law permit one to choose and insist on either of
two inconsistent causes of action his choice is bind-
ing on him. In this case plaintiff's assignor either
sold or transferred the ownership of the vessel or it
did not. Any decision it may make in its own mind
on this point may be right or wrong, but it cannot
change the law applicable to the undisputed facts of
the case, and is not controlling. In other words, it
is not a case where plaintiff's assignor can make an
election. *Sullivan* v. *Ross Estate,* 113 Mich. 311, 318;
*Mills* v. *Parkhurst,* 126 N. Y. 89; *McNutt* v. *Hilkins,*
80 Hun, 235; 15 Cyc. 262. So far as the defense of
estoppel is concerned, the essential elements of an
estoppel are obviously lacking.

The third defense also cannot be sustained. The
parties agree that the policy of insurance sued on is
a valued policy, that is, that the valuation of the
vessel was fixed and agreed upon by the parties
thereto, and that that valuation is, in the absence of
fraud and other special ·defenses, binding and con-
clusive upon the parties as to the amount to be recov-
ered under this policy in case of loss. The defendant's
theory, as I understand it, is that as policies of insur-
ance are contracts of indemnity an insured cannot
in any event recover more than the amount of his
actual loss from the insurers, and that as the plain-
tiff's assignor has already received from Fuss by

virtue of an agreement to sell the vessel $80,000 in cash and has collected $38,500 of insurance from other insurers, thereby having received in all $118,500, it has received more than the agreed valuation of the vessel, $90,000, and therefore cannot recover anything further from the insurers. It seems to me that the defendant's argument is unsound for several reasons. In the first place, the weight of authority seems to support the proposition that a valued policy of marine insurance is not to be treated in this respect as a contract of indemnity, but rather in the nature of a contract to pay liquidated damages in case of loss, as to which the insured will not be allowed to recover on the policy more than the amount thereof, and the insurer will not be allowed to defend on the ground that the property insured was worth less than the valuation agreed upon. *Irving* v. *Manning*, 1 H. L. Cas. 287, in which leading case all the judges concurred in saying (p. 307): "A policy of insurance is not a perfect contract of indemnity. It must be taken with this qualification, that the parties may agree beforehand in estimating the value of the subject assured, by way of liquidated damages, as indeed they may in any other contract to indemnify." See also *Providence & Stonington SS. Co.* v. *Phœnix Ins. Co.,* 89 N. Y. 559; *New York & Cuba Mail SS. Co.* v. *Royal Exchange Assurance Co.,* 154 Fed. Repr. 315; 3 Kent's Com. 272, 273; Arnould Marine Ins. §§ 339, 341.

But even if this were not so, and the policy of insurance should be treated as a perfect contract of indemnity, it does not seem to me that the result urged by the defendant follows. The principle underlying the application of the doctrine of indemnity to contracts of insurance is to do justice between the parties and to see to it that the insured shall not

receive more than the amount of his actual total loss. As was said by Brett, L. J., of the Court of Appeal in England, in the case of *Castellain* v. *Preston,* L. R., 11 Q. B. Div. 380, 386: " The very foundation, in my opinion, of every rule which has been applied to insurance law is this, namely, that the contract of insurance contained in a marine or fire policy is a contract of indemnity, and of indemnity only, and that this contract means that the assured, in case of a loss against which the policy has been made, shall be fully indemnified, but shall never be more than fully indemnified. That is the fundamental principle of insurance, and if ever a proposition is brought forward which is at variance with it, that is to say, which either will prevent the assured from obtaining a full indemnity, or which will give to the assured more than a full indemnity, that proposition must certainly be wrong."

It is under the application of this principle that the doctrine of subrogation has been applied to insurance, so that if the insured receives or is entitled to receive more than the total amount of his actual loss the insurer becomes subrogated to his rights to the extent of the insurance. It seems to me, however, that the defendant is in error when it seeks to apply this doctrine of indemnity to a case where the valuation of the property has been agreed upon in a valued policy of insurance, but where that valuation is not necessarily the actual value of the property. Nowhere in the answer is there any allegation as to the actual value of the vessel, although it might possibly be implied from the contract to sell the vessel to Fuss that the vessel was worth $180,000, instead of $90,000, as valued in the first group of insurance. It is not alleged that the $118,500 which the plaintiff's assignor has actually received is equal to the total

amount of its actual loss, nor that if it collects the entire $60,000 in the first group of insurance, so that it will have received in all $140,000, that equals the total amount of its actual loss. Under these circumstances, it seems to me that it would be contrary to the fundamental principle of the doctrine of indemnity to hold that because the insured has for the purposes of a first group of insurance valued the vessel at $90,000 it cannot receive from any source more than $90,000 in case of loss, even though its actual loss is very much in excess of $90,000. It is probable that in this case the actual value of the vessel increased rapidly owing to the war and to the sinking of ocean tonnage, but, whether that be so or not, it will often be the case that property which was perhaps fairly valued at the time of insurance increases very materially in value up to the time of loss, and I cannot consent to the proposition that in such cases there is any real indemnity of the insured if he is only to be allowed to recover from all sources the amount of the original valuation and not the amount of the actual value of the property at the time of loss.

Nor does the fact that two different valuations were stated in the two groups of insurance taken out on this vessel at two different times afford any defense to this action. The first group of policies valued the vessel at $90,000; the second group of policies valued the vessel at $150,000. There is high authority for the proposition that under such circumstances the insured may not only recover in case of loss the insurance up to the amount of valuation in the earlier group of policies from the insurers in that group, but may also recover from the second group of insurers the insurance up to the amount of the difference between the valuation of the property fixed in the

first and in the second group of policies. *Bousfield* v. *Barnes,* 4 Camp. 228; Philips Ins. § 1191.

In addition to all this, it appears that the plaintiff's assignor has not only not collected any thing from the insurers under the second group of policies, but has not even made demand upon them that they pay any-thing under their policies. If it appeared that the plaintiff's assignor had already collected the total amount of insurance under the second group of policies, or if it appeared that the plaintiff's assignor had received from Fuss payment in full for the total actual value of the vessel at the time of its loss, it might be that the defendant would then have a defense to this action. See *Bruce* v. *Jones,* 1 H. & C. 769. But those are not the facts here. *Non constat* that the plaintiff's assignor will ever receive another cent from Fuss or collect any thing whatever from the second group of policies. If it does, and should ulti-mately receive more than the total amount of its actual loss, then the doctrine of subrogation may come into play, and the defendant may be able to recover its proportion of the surplus received by the plain-tiff's assignor. That situation, however, is not before us on these pleadings or at the present time, and the possibility of its arising hereafter cannot be deemed to be a defense to this action.

The defendant's fourth defense is a partial defense based upon the same facts and allegations as the third defense, and cannot be sustained for the reasons given for holding that the third defense is invalid.

Plaintiff's motion for judgment on the pleadings will therefore be granted, with ten dollars costs.

Ordered accordingly.