**HENDERSON TIRE & RUBBER CO. v. GREGORY et al.**

**WELHENER v. HENDERSON TIRE & RUBBER CO. et al.**

(Circuit Court of Appeals, Eighth Circuit. November 22, 1926.)

Nos. 7342, 7349.

1. **Election of remedies** ⊂⊃15½, New, vol. 6A Key-No. Series—Defense of election of remedies must be pleaded.

The defense of election of remedies must be pleaded.

2. **Election of remedies** ⊂⊃1—Doctrine is generally recognized.

The doctrine of election of remedies, though not a favorite in equity, is generally recognized in both federal and state courts.

3. **Election of remedies** ⊂⊃1—Essential elements are existence of two remedies, in consistency between them, and choice of one; "election of remedies."

The essential elements of the doctrine of "election of remedies" are (a) the existence of the two remedies; (b) the inconsistency between the remedies; (c) the choice of one of the remedies. If any one of these elements is absent, the result of preclusion does not follow, and the pursuit of a supposed, but non-existent, remedy does not constitute an election.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Election.]

4. **Election of remedies** ⊂⊃3(1)—Unsuccessful attempt to reform contract held not to preclude its enforcement as written; "election of remedies."

That a party prayed reformation of a written contract on the ground of mistake, and sought to enforce the contract as so modified, which relief was denied on a finding that there was no mistake, held not to constitute an "election of remedies," which precluded it from enforcing the contract as written.

5. **Corporations** ⊂⊃414(1)—Corporation held bound by indorsement of acceptances of subsidiary corporation.

A manufacturing corporation, owning a majority of the stock of another corporation organized to sell its products, held bound by an indorsement of acceptances of the sales corporation, made pursuant to a contract between the two corporations, and the drawer.

6. **Corporations** ⊂⊃484(3)—Corporation may enter into contract of guaranty, where incidental to authorized business.

A corporation may enter into a contract of guaranty when reasonably incidental to its authorized business.

Appeal from the District Court of the United States for the Western District of Missouri.

Creditors' suit by Charles E. Gregory against the A. J. Stephens Rubber Company, in which C. F. Welhener was appointed receiver for defendant. From a decree allowing in part the claim of the Henderson Tire & Rubber Company, intervener, both intervener and the receiver appeal. Modified and affirmed and remanded.

Thomas Hackney, of Kansas City, Mo. (George C. Riley, of Buffalo, N. Y., and Thomas H. Edwards, John Kramer, and C. C. Weatherby, all of Kansas City, Mo., on the brief), for Henderson Tire & Rubber Co.

Leland Hazard, of Kansas City, Mo. (Maurice H. Winger and Miller, Winger & Reeder, all of Kansas City, Mo., on the brief), for Gregory, Welhener and others.

Before BOOTH, Circuit Judge, and PHILLIPS, District Judge.

BOOTH, Circuit Judge. The appeal by the Henderson Tire & Rubber Company, hereafter called Henderson Company, is from so much of the decree of May 11, 1925, made

# 590

by the court below on the intervening petition of said company in a creditor's bill (No. 321), as disallowed in part its claim. The appeal by the receiver appointed in said creditor's bill is from so much of the same decree as allowed in part the claim of the Henderson Company. The salient facts are as follows:

On January 13, 1922, appellee Charles E. Gregory filed in the court below two bills in equity in the nature of creditor's bills—one, No. 321, against the A. J. Stephens Rubber Company, hereafter called the Rubber Company; the other, No. 322, against Stephens Tire Stores Company, hereafter called the Stores Company. Jurisdiction was based on diversity of citizenship and the requisite amount involved. Receivers were appointed in both suits, who took charge of the assets of both companies. Massey Holmes was appointed special master in each of said suits.

On the 28th of February, 1922, the Henderson Company filed in suit No. 321 its intervening petition, setting up its claim. The petition alleged that on the 23d of April, 1921, the Henderson Tire & Rubber Corporation entered into a written contract with the Rubber Company, by the terms of which the Henderson Corporation agreed to manufacture for and sell to the Rubber Company certain automobile casings; that payments were to be made therefor by sight drafts drawn against bills of lading; that the intervener Henderson Company had acquired from the Henderson Corporation all of its rights in said contract. It alleged, further, that on the 2d of September, 1921, a sudsidiary and ancillary contract for the manufacture and sale of automobile casings was entered into between the intervener, the Henderson Company, and the Rubber Company, and that this latter contract had appended to it an agreement made by the Stores Company. Payment under this new contract was to be made in accordance with the following provisions:

"(8) All shipments made hereunder shall be invoices to the buyer and, except the order of August 6, 1921, above provided for shall be paid for by the buyer as follows: The manufacturer shall attach to the bill of lading of shipment a 30-day trade acceptance drawn on the Stephens Tire Stores Company, a corporation of the state of Missouri, for one-half thereof, and a 60-day trade acceptance drawn on said Stephens Tire Stores Company for the remainder thereof, each bearing interest at the rate of 8 per cent. per annum, and forward said acceptance and said bill of lading through any Kansas City bank designated by the buyer, with instructions for the delivery of said bill of lading to the buyer upon the proper acceptance of said acceptances by the said Stephens Tire Stores Company and the indorsement thereof by the buyer."

The appended agreement signed by the Stores Company was as follows:

"In consideration of the sum of one dollar ($1.00) to the undersigned in hand paid, and for other good and valuable considerations, the undersigned hereby agrees to accept, as in the foregoing contract provided, the trade acceptances referred to in the seventh paragraph of said contract, and pay the same in accordance with the respective terms thereof, hereby waiving demand and notice of protest on each thereof, and notice of acceptance, by the manufacturer, of this agreement, and all other notices to which the undersigned might otherwise be entitled.

"In witness whereof, the undersigned has caused these presents to be executed and its corporate seal to be hereto affixed this —— day of August, 1921, by its officers thereunto duly authorized.

"Stephens Tire Stores Company,
"By A. J. Stephens, President."

The petition further alleged that certain trade acceptances had been drawn, presented, accepted, and indorsed for goods manufactured and delivered under the contract in accordance with the provisions thereof, but had not been paid, amounting to $56,374.83.

The petition for a further cause of action alleged that the Rubber Company and the Stores Company and the receivers of the respective companies had refused to accept further deliveries under said contract, and had refused to give shipping orders as provided in said contract, although tender had been made by the Henderson Company. The petition further alleged:

"Therefore both the A. J. Stephens Rubber Company and the Stephens Tire Stores Company are under the law held for an accounting to this intervener for such damages as shall have been or will be suffered by this intervener, Henderson Tire & Rubber Company, Inc., by reason of the breach of contract aforesaid on the part of the parties defendants as aforesaid, in the respective causes aforesaid."

Damages were averred for the alleged breach of contract in the sum of about $120,000. The prayer of the petition was that the amount due and owing the intervener, the Henderson Company, be ascertained; that the claim, as established and allowed, be paid out of the assets along with the claims of other

creditors. The petition was verified by attorney.

On the same day that the foregoing petition was filed by the Henderson Company as intervener in the creditor's bill No. 321 against the Rubber Company, a similar petition in intervention was filed by it in the creditor's bill No. 322 against the Stores Company.

On the 12th of January, 1923, the Henderson Company filed a second or amended petition in intervention in the creditor's bill No. 322. This amended petition alleged the making of the contract of the 23d of April, 1921. It further alleged the making of an oral contract under date of September 2, 1921, which, as set out, was substantially the same in terms as the written contract of the same date set up in the first petition in intervention, except that both the Rubber Company and the Stores Company were the purchasers. The amended petition further alleged that by mutual mistake, when this contract of September 2d was reduced to writing, it provided that the Rubber Company alone was the purchaser, instead of providing that the Rubber Company and the Stores Company were copurchasers. An additional prayer asked that the contract be reformed as regards the mutual mistake. In other respects the amended petition was substantially the same as the original petition filed in creditor's bill No. 322.

The receiver in No. 322 answered this amended petition, admitting the trade acceptances which had been drawn, presented, and accepted, but not paid, under the contract; admitted that the Henderson Company demanded, both of the Rubber Company and of the Stores Company, shipping orders for further shipments under said contract, and that tender was made to the receiver, and performance of the contract demanded of him. The receiver denied that there was any mistake in entering into the written contract of September 2, 1921; denied that the Stores Company was indebted to the Henderson Company in any sum whatever, except $56,719.83 on the trade acceptances.

The issues being thus joined, a stipulation was entered into as follows:

"Stipulation.—It is agreed that the evidence offered at this hearing and all subsequent hearings shall be considered as introduced in both cases; that is, in the case of Gregory against A. J. Stephens Rubber Company, No. 321, and Gregory against Stephens Tire Stores Company, No. 322."

It was admitted that the amount of the claim of the Henderson Company for damages set up in its petition in intervention was reduced to the sum of $112,140.48, by reason of the filling of two orders which were pending at the time of the appointment of the receiver. Testimony was taken by the master.

Further proceedings in suit No. 322 resulted in a holding by the master that the Henderson Company was not entitled to a reformation of the contract of September 2, 1921. The trial court approved this holding of the master. Judgment was entered. No appeal was taken.

Further proceedings in suit No. 321 resulted in a finding by the master that there could be no recovery by the Henderson Company against the Rubber Company on the claim for damages for breach of the contract of September 2, 1921. The basis for this finding was that the Henderson Company, on the trial of its amended petition in intervention in suit No. 322, had taken the position that the contract of September 2, 1921, was made not with the Rubber Company but with the Stores Company as purchaser, and that the Henderson Company could not now in suit No. 321 take the inconsistent position that the contract was with the Rubber Company. In other words, that the Henderson Company had made an election of remedies. But the master further found that, if he was wrong in his conclusion, and the Henderson Company was entitled to recover on its claim for damages, then the amount of the recovery under the evidence should be $112,140.48.

The master further held that there could be no recovery on the claim of the Henderson Company against the Rubber Company, based on the trade acceptances indorsed by the latter company. The grounds for this holding were that, inasmuch as the Henderson Company had repudiated the contract of September 2, 1921, that contract could not be considered as evidence in connection with the claim on the trade acceptances, and that, laying aside the contract, the remaining facts in evidence were not sufficient to bring the act of the Rubber Company in indorsing the trade acceptances within any exception to the general rule that one corporation has no authority to indorse the obligations of another corporation. But the master held that if his conclusion was wrong, and there could be a recovery on the trade acceptances, then the amount of the recovery should be $56,394.83.

The trial court by its decree held that there could be no recovery by the Henderson Company on its claim for damages, adopting the view of the master that there had been an

election of remedies. From this part of the decree the Henderson Company has appealed. But the trial court by its decree held that the Henderson Company was entitled to recover against the Rubber Company on the trade acceptances indorsed by the latter company, on the ground that the relationship existing between the Rubber Company and the Stores Company, both as to stock ownership and as to their methods of carrying on business, was of such character as to make it sufficient to support the contract of indorsement; in other words, that the contract of indorsement was reasonably incidental to the authorized business of the Rubber Company. From this part of the decree the receiver of the Rubber Company has appealed.

### Appeal of the Henderson Company.

The main question involved in the appeal of the Henderson Company is whether the unsuccessful attempt of that company to obtain reformation of the contract of September 2, 1921, was an election of remedies which precluded any recovery of damages for breach of the contract as actually written and executed. The question whether a case was made out for reformation of the contract is not before us, and we express no opinion upon it. We have, however, carefully examined the whole of the evidence in the present record with the purpose of determining its bearing and effect upon the question of election of remedies.

Four persons testified relative to the negotiations leading up to the contract of September 2, 1921—two on behalf of the claimant, Henderson, president of the Henderson Company, and Lake, a salesman in its employ; two on behalf of the receiver, Stephens, president of both the Rubber Company and the Stores Company, and Ford, manager of the Stores Company. It is not necessary to recite their testimony at length. All testified in substance that the negotiations were carried on orally at one time between Lake, on one side, and Stephens and Ford, on the other. Henderson testified that later he received his information as to the negotiations from Lake and Ford; that he gave instructions to Mr. Reilly, attorney for the Henderson Company, to draw up the contract. Lake testified that the substance of the negotiations was that the Stores Company was to be the purchaser and the Rubber Company was to indorse the contract. Henderson testified that it was his understanding that the Stores Company was to be the purchaser, and that the Rubber Company was to be guarantor and indorser;

that he so advised Reilly, and left it to him to draw up a legal contract. Stephens testified that there was no mistake on the part of his companies, that he signed the contract as submitted by the Henderson Company, and that it was his understanding that both companies would be liable on the contract. Ford testified that it was his understanding that the contract of September 2, 1921, was to be a continuation of the former contract; that the contract was to be between the Henderson Company and the Rubber Company, the Stores Company signing the trade acceptances and the Rubber Company indorsing them.

This testimony, showing the way in which the negotiations were carried on and the number of people taking part in the same, discloses ample room for honest misunderstanding as to the exact form of contract which the parties intended to have drawn up as the expression of their agreement. We fail to find, in this testimony or elsewhere in the record, any evidence of bad faith or attempted fraud. There was merely an honest misunderstanding among the parties who negotiated the contract as to what the exact provisions of the contract were intended to be. The testimony shows, however, that all parties were in accord that the assets of both the Rubber Company and the Stores Company were to be behind the contract.

It is also to be noted that all three of the companies proceeded to carry out the contract as actually written. Shipments were made; trade acceptances drawn, presented, accepted, and indorsed. All three companies acquiesced in and acted under the contract as written. That there was a breach of the contract by the Rubber Company is conceded. The question remains whether the Henderson Company is precluded from recovery of damages for the breach because of its unsuccessful attempt to have the contract reformed. The trial court held, approving the finding of the special master, that there had been an election of remedies by the Henderson Company in bringing suit to reform the contract, which precluded a recovery upon the contract as written.

[1] Election of remedies is a defense which, to be available, must be pleaded. 20 C. J. 37; World's Fair Mining Co. v. Powers, 224 U. S. 173, 180, 32 S. Ct. 453, 56 L. Ed. 717; Stein v. McAuley, 147 Iowa, 630, 125 N. W. 336, 27 L. R. A. (N. S.) 692, 695, 140 Am. St. Rep. 332; Henry v. Herrington, 193 N. Y. 218, 86 N. E. 29, 20 L. R. A. (N. S.) 249. The answer of the receiver of the Rubber

Company to the claim of the Henderson Company is not included in the record, so that we are unable to say whether such a defense was set up. In view of the action of the trial court, however, we assume that the defense was properly pleaded, or that what occurred on the trial obviated the necessity of a formal pleading. We therefore turn to the merits of the defense.

[2] The doctrine of election of remedies, though criticized as a harsh one and not a favorite in equity (Friederichsen v. Renard, 247 U. S. 207, 38 S. Ct. 450, 62 L. Ed. 1075), is widely recognized both in federal and state courts (Robb v. Vos, 155 U. S. 13, 15 S. Ct. 4, 39 L. Ed. 52; Northern Assur. Co. v. Grand View Ass'n, 203 U. S. 106, 27 S. Ct. 27, 51 L. Ed. 109; Bierce v. Hutchins, 205 U. S. 340, 27 S. Ct. 524, 51 L. Ed. 828; So. Pac. Co. v. Bogert, 250 U. S. 483, 39 S. Ct. 533, 63 L. Ed. 1099; United States v. Oregon Lumber Co., 260 U. S. 290, 43 S. Ct. 100, 67 L. Ed. 261; Barnsdall v. Waltemeyer, 142 F. 415 [C. C. A. 8]; Union Cent. Life Ins. Co. v. Drake, 214 F. 536 [C. C. A. 8]; Doyle v. Hamilton Fish Corp. [C. C. A.] 234 F. 47; Jadwin v. Hoyt [C. C. A.] 1 F.[2d] 784; Fire Protection Co. v. Hawkeye Co., 8 F.[2d] 810 [C. C. A. 8]; Garrett v. Farwell Co., 199 Ill. 436, 65 N. E. 361; Drainage Dist. No. 1 v. Dowd, 132 Ill. App. 499, 503; Wells v. Western Union Tel. Co., 144 Iowa, 605, 123 N. W. 371, 24 L. R. A. [N. S.] 1045, 138 Am. St. Rep. 317; Clark v. Heath, 101 Me. 530, 64 A. 913, 8 L. R. A. [N. S.] 144; McLaughlin v. Austin, 104 Mich. 489, 62 N. W. 719; Sullivan v. Ross' Estate, 113 Mich. 311, 71 N. W. 634, 76 N. W. 309; Gould v. Blodgett, 61 N. H. 115; Columbia Trust Co. v. Norske Co., 100 Misc. Rep. 550, 166 N. Y. S. 915; Henry v. Herrington, supra; Whipple v. Stephens, 25 R. I. 563, 57 A. 375).

The doctrine stated in its simplest form means that, if a party has two inconsistent existing remedies on his cause of action and makes choice of one, he is precluded from thereafter pursuing the other. The doctrine may be applicable as well where the remedies are against different persons as where they are against the same person.

[3] From the authorities cited there may be deduced the following conclusions: (1) The essential elements of the doctrine are (a) the existence of the two remedies; (b) the inconsistency between the remedies; (c) the choice of one of the remedies. (2) If any one of these elements is absent, the result of preclusion does not follow. (3) The pursuit of a

16 F.(2d)—38

supposed, but nonexistent, remedy does not constitute an election.

In the case at bar we are concerned mainly with the conclusion last stated. It is supported by many of the cases above cited:

In Bierce v. Hutchins, supra, the court said (page 347 [27 S. Ct. 525]): "The fact that a party, through mistake, attempts to exercise a right to which he is not entitled, does not prevent his afterwards exercising one which he had and still has unless barred by the previous attempt."

In Barnsdall v. Waltemeyer, supra, this court said (page 420): "But the fatuous choice of a fancied remedy that never existed, and its futile pursuit until the court adjudges that it never had existence, is no defense to an action to enforce an actual remedy inconsistent with that first invoked through mistake."

In Doyle v. Hamilton Fish Corp., supra, the appellate court adopted as its own the opinion of the trial court, which contained the following: "As to the defense of an election, based upon the unsuccessful effort to dispossess the lessee upon allegations that there was no lease, it is enough to say that a party has an election only between existing, not supposed, rights. Bierce v. Hutchins, 205 U. S. 340, 27 S. Ct. 524, 51 L. Ed. 828. The plaintiff could not destroy his rights under the lease by mistakenly following other supposed rights which turned out not to exist. That would be to put him, not to an election, but to a correct estimate of his right under pain of forfeiture."

In Jadwin v. Hoyt, supra, the court after citing numerous authorities said (page 786): "From these cases and numerous others which might be cited, the rule is deducible that pursuit of a supposed, but actually nonexistent, remedy, is not an election which will bar the later successful prosecution of one actually existing, though inconsistent with the former. And this is generally true, though the first remedy be pursued to defeat by judgment."

In McLaughlin v. Austin, supra, the court said (104 Mich. 491, 62 N. W. 720): "There is a difference between an election of remedies and a mistake of remedy, and the law has not gone so far as to deprive parties of meritorious claims merely because of attempts to collect them by inappropriate actions, upon which recovery could not be had."

In Henry v. Herrington, supra, the court said (193 N. Y. 222, 86 N. E. 30, 20 L. R. A. [N. S.] 251): "The right to make an election must actually exist, and, if it shall appear that it did not, then it is quite immaterial, in

its bearing upon a subsequent action, that some previous action, looking to a remedy for the plaintiff's loss, had been brought. * * * * The plaintiff's previous action was fruitless, because she had no right to maintain it, upon her own showing; but that did not preclude her from subsequently bringing an action in which she asserted a right which she possessed. * * * Any step or action taken by her, which was fruitless because proceeding upon a misconception of the rights which the law gave her, left her unaffected as to any legal remedy which she did possess."

In the case of Sullivan v. Ross' Estate, supra, the court said (113 Mich. 318, 76 N. W. p. 310): "The plaintiff sought to recover upon an oral contract. He had no right of action upon that contract, because the court has said no such contract existed. Can it be said that defendant shall not be required to account for the proceeds of 7,000,000, or 8,000,000 feet of lumber, which it admits it had, because plaintiff claims the transaction was evidenced by an oral contract, when the court finds no such contract existed, but a written one did? * * * There is a difference between an election of remedies and a mistake of remedy, and the law has not gone so far as to deprive parties of meritorious claims merely because of attempts to collect them by inappropriate actions, upon which recovery could not be had."

The foregoing cases also establish the proposition that if the remedy first sought was not available, it is immaterial *why* this was so—whether because the assumed facts did not exist, or because the facts did not as a matter of law entitle plaintiff to the relief sought. In either instance, the doctrine of election of remedies does not apply.

[4] Applying these principles to the facts of the case at bar as outlined above, it is evident that there was no election of remedies. There was but one remedy, and that was against the Rubber Company, or its receiver, upon the contract as written. There was no remedy by way of reformation of the contract, and the trial court so found. There was consequently no choice of remedies. But, as held in the above cited cases, the unsuccessful attempt to pursue a remedy which did not exist did not preclude asserting one which did exist. The written contract was still a subsisting one; remedy for a breach thereof was not forfeited.

We have carefully considered the cases cited by appellee, receiver, and in our opinion they are not opposed to the conclusions we have reached. In some of the cases there were two actually existing inconsistent remedies, and a choice made of one. It was held

that there was an election of remedies. In others, a party in maintaining his suit swore to the existence of certain specific facts within his own knowledge and suffered defeat. Later he sought to maintain another suit, based on the same transaction, by swearing to specific facts inconsistent with those sworn to at first. It was held the party was estopped. Neither of these situations is shown by the record to exist in the case at bar.

Our conclusion is that the Henderson Company did not forfeit its right to maintain suit for damages against the Rubber Company simply because it honestly, but mistakenly, pursued a nonexistent remedy.

### Appeal of the Receiver.

[5] This involves the right of the Henderson Company to recover against the Rubber Company on the trade acceptances which were drawn on the Stores Company, accepted by it, and indorsed by the Rubber Company. The master disallowed the claim, basing the disallowance on two conclusions: (1) That the contract of September 2, 1921, was no longer a subsisting contract; (2) that, laying aside the contract, no facts appeared which were sufficient to take the case out of the general rule that one corporation is not authorized to guarantee the obligations of another party or corporation.

The trial court agreed with the first conclusion, but disagreed with the second, and allowed the claim. The relationship between the two companies and their co-operation in doing business is shown by the following testimony of Stephens:

"Q. Mr. Stephens, you are president of the A. J. Stephens Rubber Company? A. Not now.

"Q. You were? A. Yes, sir.

"Q. You own a majority of the capital stock of the A. J. Stephens Rubber Company? A. I did; yes, sir.

"Q. With reference to the period August and September, 1921, at that time you were owning, were you not, a majority of the stock of the A. J. Stephens Rubber Company? A. Yes, sir.

"Q. I will ask you if you will state how and why the business of the Stephens Tire Stores Company was begun and was placed in operation? * * * A. Well, we were operating two factories—an accessory plant known as the A. J. Stephens Rubber Company and the tire factory in Kansas City, Kan., which was leased, and we had a greater output than we could sell. We established these stores for the purpose of taking the output of these two plants. * * * A. I established

them personally, because the company did not have any money at the time to do it, and I agreed to take the initiative providing the company would take a part of the loan in the form of trade acceptances, which was done and approved by the bankers who handled our accounts. * * * Fifty-one thousand shares of common stock was issued to the Rubber Company, and all of my movements were entirely before the board of directors and with their approval. * * * "

We agree with the trial court in holding that the indorsement by the Rubber Company of the acceptances of the Stores Company was in furtherance of the business of the Rubber Company and reasonably incidental to it. In re John B. Rose Co. (C. C. A.) 275 F. 416. Furthermore, this conclusion is fortified by our holding that the contract of September 2, 1921, was still a valid, subsisting contract, and therefore admissible in evidence on the question of the validity of the indorsements on the trade acceptances.

[6] Upon the whole evidence, therefore, we think that the claim on the indorsements is brought well within the principle that a corporation may enter into a contract of guaranty when reasonably incidental to its authorized business. See Green Bay, etc., R. Co. v. Union Steamboat Co., 107 U. S. 98, 2 S. Ct. 221, 27 L. Ed. 413; In re John B. Rose Co., supra; Hummel v. Warren Steel Casting Co., 5 F.(2d) 451 (C. C. A. 8), and cases cited; Smith v. Norwich City Water Com'rs, 38 Conn. 208; Merc. Tr. Co. v. Kiser & Co., 91 Ga. 636, 18 S. E. 358; Cent. Lumber Co. v. Kelter, 201 Ill. 503, 66 N. E. 543; Thomas v. Bank, 40 Neb. 501, 58 N. W. 943, 24 L. R. A. 263. See, also, In re N. Y. Car Wheel Works (D. C.) 141 F. 430; Hunter v. Baker Co. (C. C.) 190 F. 665.

In view of the fact that the claim of the Henderson Company for damages is pending in suit No. 321, and its claim on the trade acceptances is pending in both suits, No. 321 and No. 322, we think that the details of the allowances should be worked out in the trial court. No issue is raised in this court as to the amount of damages. The master has found the amount to be $112,140.48. The decree is accordingly modified, by allowing the claim of the Henderson Company for damages for breach of contract in the sum of $112,140.48, with interest from the date of the entry of the decree, and, as so modified, the decree is affirmed. The causes involved in both appeals are remanded for further proceedings not inconsistent with the views hereinbefore expressed.

It is so ordered.